745 P.2d 1062

**UNIVERSITY OF UTAH HOSPITAL, Plaintiff-Appellant,**

and

**Steve Kehoe and Connie Kehoe, Medical indigents, Plaintiffs,**

v.

**BOARD OF COUNTY COMMISSIONERS OF TWIN FALLS COUNTY, Twin Falls County and Clerk of Twin Falls County, Defendants-Respondents.**

No. 16793.

Court of Appeals of Idaho.

Sept. 30, 1987.

442

Dean Williams, Blackfoot, for plaintiff-appellant.

K. Ellen Baxter, Twin Falls Co. Atty., and Rockne K. Lammers, Deputy Co. Atty. (argued), for defendants-respondents.

WALTERS, Chief Judge.

In November of 1983 Connie Kehoe, a resident of Twin Falls County, was treated at the University of Utah Hospital for a drug overdose. When Kehoe did not pay her bill, the hospital sought payment from Twin Falls County pursuant to Idaho's medical indigency statutes. The Board of Commissioners of Twin Falls County denied the application. On review, the district court upheld the board's decision. The hospital has appealed. We affirm.

The hospital presents two principal issues for resolution: first, whether a document submitted to the county by the hospital within three days of Kehoe's admission for emergency treatment was an "application" as described in I.C. § 31–3504; and, if not, whether a later application was filed within the time period prescribed by that statute. The hospital also raises other issues relating to (a) delay by the board of county commissioners in rendering its decision; (b) failure of the county to conduct an independent investigation concerning Kehoe's indigency; (c) limitation of the scope of the hearing before the board of commissioners; and (d) refusal by the district

court to allow the hospital "to prove its claim."

Briefly stated, the facts are as follows. On November 13, 1983, Mrs. Kehoe consumed an overdose of phenobarbitol. She was transferred to the University of Utah Hospital in Salt Lake City for emergency treatment. There she incurred a bill totaling $17,889.17. Three days after admitting Kehoe, the hospital sent a letter and "Notice of Admission" to Twin Falls County. At the same time and although Mrs. Kehoe remained hospitalized, the hospital sent a letter to Kehoe's home address directing her to complete and file an enclosed "County Application" within forty-five days. After repeated inquiries by the hospital's attorney, Kehoe indicated to him that the application had been filed. However, as Mrs. Kehoe later admitted during a hearing before the board of county commissioners, she never filed the application with Twin Falls County.[1] The county took no action relative to the hospital's "notice."

Kehoe made no payments upon her bill. In October, 1984, the hospital obtained a judgment against the Kehoes. On July 9, 1985, the Kehoes filed for bankruptcy. Six days later, on July 15, the hospital filed an application with Twin Falls County seeking payment of the Kehoe account. One month later, the board of county commissioners summarily denied the application. Pursuant to I.C. § 31–3505, the hospital requested and was granted a hearing before the board. Following the hearing, the board concluded that the application was untimely and again denied the request. The hospital sought review in the district court, where the board's decision was upheld.

## I

The hospital argues that the documents submitted to Twin Falls County immediately after Kehoe was admitted for treatment met the statutory requirements for an application and, as such, should be deemed approved as a result of the county's failure to act within sixty days. *See* I.C. § 31–3505. Alternatively, the hospital contends that its second application was timely.

## A

We first examine the contention that the early documents constituted an application for assistance. An analysis of the hospital's arguments requires a brief review of the law of medical indigency. Idaho's scheme for ensuring medical treatment for those unable to pay for necessary services and for ensuring payment to providers of those services is encompassed in Chapters 34 and 35 of Title 31 of the Idaho Code. These statutes do not exclude patients hospitalized as a result of self-inflicted injuries, as opposed to those injured in accidents or suffering other illnesses. *St. Alphonsus Regional Medical Center, Ltd. v. Twin Falls County,* 112 Idaho 309, 732 P.2d 278 (1987).

Ordinarily an application for assistance is to be submitted prior to treatment. *See* I.C. § 31–3404. However, when emergency medical service is required, an application may be submitted within forty-five days after admission or within thirty days after the patient becomes medically indigent. I.C. § 31–3504. This statute also requires that the chargeable county be notified as soon as practicable upon a hospital's learning that a patient is medically indigent. An application may be submitted by a third person on behalf of the patient. I.C. § 31–3408. With certain exceptions inapplicable to the instant case, a county may not allow any claim for payment until an application has been filed and approved. I.C. § 31–3407. If the board of county commissioners fails to notify an applicant in writing of the action taken on an application, that application is deemed approved. I.C. § 31–3505; *St. Benedict's Hospital v. County of Twin Falls,* 107 Idaho 143, 686 P.2d 88 (Ct.App.1984).

---

1. Curiously, the form supplied to Kehoe was addressed to *Cassia* County. The record does not indicate whether the envelope which apparently accompanied the form was similarly addressed. In any case, Kehoe essentially testified that she did not submit the application to any county.

The district court held, as a matter of law, that the documents submitted to the county on November 16, 1983, did not constitute an application. The parties are in agreement regarding what documents were received by the county. But they disagree as to the legal effect of these documents.

The only two documents received by the county within the forty-five days following admission were a cover letter and an incomplete form. The body of the letter we reproduce in full:

Enclosed please find a Notice of Admission and an Application for the above account. Mrs. Kehoe was admitted to the University of Utah Medical Center on November 13, 1983 for Multiple Drug Overdose.

The family is without medical insurance, and we feel the patient will qualify under [the] Idaho Indigency Statute for Medical Assistance.

Your consideration for medical assistance for this medically needed [sic] family through Twin Falls County will be greatly appreciated.

The accompanying document was entitled, "NOTICE OF ADMISSION." The heading of this form also included the following parenthetical sentence: "(This is *not* an application for County Assistance.)" (Emphasis original.) Both documents were signed by the hospital's credit manager. Upon receipt, the chairman of the board of commissioners noted at the bottom of the cover letter, "no application included in the letter."

The hospital argues that the letter and notice of admission, individually or in combination, meet the standard for an application announced in *Carpenter v. Twin Falls County*, 107 Idaho 575, 691 P.2d 1190 (1984). In *Carpenter* our Supreme Court held that an application cannot be denied simply because it does not comply with technical requirements. An application need only be sufficient to initiate the claim procedure. Sufficient information upon which the board can base its decision may

be later submitted to cure any deficiencies. The hospital points to the reference in the cover letter to "an Application" and to the purpose of these documents as implied by language such as "we feel the patient will qualify under [the] Idaho Indigency Statute for Medical Assistance. Your consideration for medical assistance for this medically needed [sic] family through Twin Falls County will be greatly appreciated."

■ However, like the district court below, we are not persuaded that these documents rise to the level of an "application." The "NOTICE OF ADMISSION" recites:

PLEASE TAKE NOTICE that a possible [sic] medically indigent person whose care may be chargeable to Twin Falls County, was admitted [to the University of Utah Hospital.]"

The form indicated that Kehoe's eligibility for other assistance was "now being verified." In contrast, the form supplied to the Kehoes by the hospital specifically states:

Applicant believes the patient is a medically indigent person as defined in I.D. [sic] 31–3502(1), therefore, request is hereby made to the above County Commissioners for payment of the University of Utah Hospital account.

In our opinion, the form sent by the hospital to the county was clearly designed and intended to fulfill the § 31–3504 requirement for notice of admission of a medically indigent person. It was not an application for assistance.[2] Nor can the two documents in combination be construed as an application. Although the hospital may have intended to enclose an application along with the above documents, apparently none was submitted to Twin Falls County. Unlike the *Carpenter* application, the instant documents do not suffer from mere "technical" flaws. Instead the application itself was absent from the envelope.

We hold that the letter and notice received by the county did not comprise an "application." Although more cooperative county personnel might have inquired about the missing application, the statutory

---

2. As noted, in addition to setting forth the time limits for an application, I.C. § 31–3504 provides: "The chargeable county or counties shall

be notified as soon as practicable upon the hospital's obtaining information disclosing that a patient is medically indigent."

scheme imposes no such duty. Therefore, these documents did not subject the county to liability under I.C. § 31–3505 for failure to respond to an application.

B

In the alternative, the hospital asserts that the application submitted on behalf of Kehoe on July 15, 1985, should not have been denied. In light of its earlier attempt, the hospital termed this a "supplemental" application. The county acknowledged this later application, but deemed it untimely. When the county denied the application, the hospital requested a hearing pursuant to I.C. § 31–3505. Following a hearing, the board of county commissioners again denied this request because "the application was not filed timely." The hospital argues that Mrs. Kehoe did not become indigent until shortly before she filed for bankruptcy. Accordingly, the hospital contends its "supplemental" application was filed within the thirty-day period provided by I.C. § 31–3504 for medical indigency arising subsequent to Mrs. Kehoe's admission.[3]

We believe the issue of the timeliness of the hospital's application, under I.C. § 31–3504, can be resolved in this case by considering the pronouncement made by our Supreme Court in *IHC Hospital, Inc. v. Board of Commissioners of Twin Falls County,* 108 Idaho 136, 697 P.2d 1150 (1985) (*overruled on other grounds, Intermountain Health Care, Inc. v. Board of Commissioners of Caribou County,* 108 Idaho 757, 702 P.2d 795 (1985)). There the Court said:

> We do not anywhere find a clear explanation of precisely what a hospital must demonstrate, as to the question of indigency, in order to obtain reimbursement in these emergency medical situations involving indigents. We believe that a standard of reasonableness can certainly be inferred from the wording and spirit of the statutory scheme, *i.e.,* if a hospital

gives emergency treatment to an indigent in an emergency situation without the county board of commissioners' prior approval, as the hospital is allowed to do under I.C. § 31–3407, then the hospital must use diligence in gathering all reasonably available information relevant to the indigency of the patient, and the hospital should do so as soon after the admission of the patient as is possible. The county, however, cannot place the entire burden of proving indigency, and the entire risk of non-payment, upon the hospital. Unless there is reason to believe the hospital has been recalcitrant in investigating the claim of indigency, then, after presentation of some proof of indigency (not necessarily a prima facie showing) by the hospital, then the claim must be paid—this, assuming proof that the care was actually given, that it was necessary, and that the charges rendered therefor were reasonable.

In the instant case, it is clear the hospital did not use diligence in gathering all reasonably available information relevant to the indigency of Mrs. Kehoe—as soon after her admission as a patient as was possible—or, if the hospital did use diligence in determining Mrs. Kehoe's indigency, the hospital was not diligent in filing an application with the county. The record shows that the hospital simply relied on Mrs. Kehoe to complete and file the application with Twin Falls County. Although the hospital may have been misled by Mrs. Kehoe's false assurance that the application had been completed and filed with the county, we do not believe the hospital's reliance on Mrs. Kehoe was sufficient to discharge the hospital's duty of exercising reasonable diligence in presenting some proof of indigency to the county to support the hospital's claim, as soon after Mrs. Kehoe's admission as was possible. Therefore, we hold that the hospital's "supplemental" application, in July 1985, was untimely.[4]

---

**3.** In pertinent part, I.C. § 31–3504 provides:

If a person becomes medically indigent subsequent to admission to a hospital or subsequent to receiving treatment by a hospital, an application for the person, or on his behalf,

shall be made within thirty (30) days of the time the person becomes medically indigent.

**4.** We are not persuaded by the hospital's argument that Mrs. Kehoe's subsequent bankruptcy may be used as the benchmark for establishing

## II

■ Having resolved the two principal issues in favor of the county, we turn to the hospital's other arguments. The hospital contends that the application should be deemed approved due to the delay in preparing a written decision following the hearing. The hearing was held on November 15, 1985. On April 15, 1986, the county rendered its decision. Although this delay may have been unnecessary given the brief, formalistic, and conclusory form of the decision, we find nothing in the statutory scheme which would require a more rapid decision. The hospital argues that the sixty-day response requirement of I.C. § 31–3505 should be applied by analogy. However, absent a demonstration of prejudice to the applicant, we are not prepared to hold the county liable simply because a decision was not rendered forthwith.

■ The hospital also contends the application should be deemed approved because the county denied it without conducting an independent investigation as described in I.C. § 31–3405. In our opinion, the hospital's reliance upon I.C. § 31–3405 is misplaced. In the case before us, an investigation by the county would have been superfluous, since the hospital's own evidence rebutted its argument of timeliness. No harm to the applicant resulted from the county's failure to investigate; therefore we decline to reverse on this ground.

■ Next, the hospital argues that the board improperly limited the scope of the hearing before the commissioners. On the basis of the county attorney's recommendation, and over the objection of the hospital, the board did limit the hearing to the issue of timeliness of the application. Because other proof was necessary to establish a valid claim, the hospital contends it was also entitled to present evidence on the necessity of treatment, the reasonableness

of charges and the fact of medical indigency. However, the board's earlier ruling had suggested that timeliness was the substantial issue in contention. The commissioner who moved to limit the hearing to the timeliness issue also stated: "If [the hospital] can show us that the application was in fact timely, then we will continue the hearing and receive more evidence." The hospital was permitted to present its proof relevant to timeliness of the application. We find nothing objectionable in the board's decision to *initially* limit the scope of the hearing to the predominate issue.

■ Following denial by the board, the hospital filed an "appeal" with the district court rather than a "petition for review." The hearing before the district court was framed by the hospital's "motion for summary judgment." When the court entered its memorandum decision, the motion was "treated [by the court as one] to prevail on the merits." Review of administrative decisions is conducted without a jury and normally is confined to the agency's record. I.C. § 67–5215(f). But in cases of alleged irregularities in procedure, not shown in the record, proof thereon may be taken in the district court. *Id.* The hospital contends that the court erred by not allowing a presentation of proof. The hospital argues that it should have been permitted to present its entire claim to the district court. However, I.C. § 67–5215(f) limits review to the record and evidence of procedural irregularities below. Here, the transcript of the board's hearing contains an extended debate regarding the board's authority to limit the issues before it. The hospital has not suggested what other evidence of irregularities would have been submitted. Therefore, we hold that the hospital was not prejudiced by the district court's refusal to expand the record by entertaining the hospital's proffer. The procedure employed was consistent with that set forth at

---

her indigency. The concept of liability of a county for its medically indigent would be strained under the hospital's theory. A determination of indigency should be made shortly after the patient is admitted for treatment, or soon after the treatment is finished. The pur-

pose of the statutory scheme is to assure treatment for people who are then unable to pay for their care. It is not a system by which hospitals may collect on accounts receivable which have become unrecoverable due to bankruptcy.

I.C. § 67–5215 for judicial review of contested administrative cases.

The decision of the district court upholding the board's denial of the hospital's application is affirmed. Costs to Twin Falls County. No attorney fees awarded on appeal.

BURNETT and SWANSTROM, JJ., concur.