686 P.2d 88

ST. BENEDICT'S HOSPITAL, a non-profit Idaho corporation, Plaintiff-Appellant,

v.

The COUNTY OF TWIN FALLS, Idaho, a body politic and political subdivision of the State of Idaho, Defendant-Respondent.

No. 14589.

Court of Appeals of Idaho.

July 31, 1984.

Larry R. Duff, Goodman, Duff & Chisholm, Rupert, for plaintiff-appellant.

Lloyd J. Webb, Webb, Burton, Carlson, Pedersen & Paine, Twin Falls, for defendant-respondent.

BURNETT, Judge.

St. Benedict's Hospital has sued Twin Falls County to recover the cost of caring for an indigent person. The record before us contains no written application by the hospital for indigent aid from the county nor any written denial of such aid. Nevertheless, the hospital insists that it did ap-

ply, and the county insists that the application was denied.

These anomalous contentions frame the substantive issues on appeal—whether a written application was in fact submitted and, if so, what result should follow from the county's failure to deny the application in writing. This case also presents a procedural question concerning the proper roles of the magistrate division and the district court when a lawsuit seemingly partakes both of a claim for money and of a request for judicial review of administrative action. Here, in the proceedings below, a magistrate entered judgment for the hospital. On appeal, the district court reversed the judgment and ordered the case to be dismissed. For reasons explained in this opinion, we now vacate the district court's order and remand the case for further proceedings.

I

The facts, uncontroverted except as noted, are as follows. A resident of Twin Falls County underwent an emergency appendectomy at St. Benedict's Hospital in Jerome County. The hospital's credit manager promptly contacted a member of the Board of County Commissioners of Twin Falls County and inquired about the procedure to file a claim for indigent assistance. Following that contact, according to the hospital, a written application was submitted to the county. Although the county never has admitted receiving the application, it has acknowledged that "this could be possible." In any event, it is undisputed that the county later requested the hospital to submit an itemized statement of services rendered. The hospital maintains that this was done. The county, while refusing to admit receiving the itemized statement, again acknowledges that it is "possible." Thereafter, the county orally informed the hospital by telephone that the application had been denied. Attorneys for the hospital sent a letter to the county requesting reconsideration of the application and demanding payment. When the county failed to respond, the hospital brought this suit for $3,269.10 in charges for patient care.

Following trial, a magistrate entered findings of fact and conclusions of law. He found that the hospital indeed had filed a written application. He further found that the county denied the application without a hearing, without keeping minutes of its action, and—most important to this appeal—without notifying the hospital in writing of its decision. The magistrate concluded that the application should be deemed approved, for lack of a written denial, and that the hospital was entitled to judgment. As mentioned, the district court reversed the judgment and dismissed the case. In remarks from the bench explaining his decision, the district judge stated that the record failed to show the submission of a written application to the county. The judge further stated that the magistrate lacked jurisdiction in the case because the hospital should have petitioned the district court for judicial review of administrative action by the county, rather than suing the county in the magistrate division. From this decision, it was the hospital's turn to appeal.

II

Before examining the issues related to the application and to the lack of a written denial, we will address what the district court apparently believed was a threshold question of jurisdiction. The district court's ruling on this point seemingly was grounded upon the premise that even if a written application had been submitted and denied, the hospital's sole remedy as a party aggrieved by such action would have been to seek judicial review in the district court. The presumptions underlying this premise, that a written application was submitted and that it was denied, are scrutinized in Parts III and IV of our opinion. Our present, narrow inquiry is whether—even if the hospital's remedy were limited as suggested by the district court—such limitation would have represented a jurisdictional bar to relief upon the hospital's complaint. We believe it would not.

■ A complaint which seeks relief available only from the district court, but which is captioned in the magistrate division, may be procedurally irregular but it is not jurisdictionally defective. The magistrate division is not an entity wholly separate from the district court. It is part of the district court, served by the same clerk and by a unitary filing system. Judges of the magistrate division receive their cases by assignment from the district judges, pursuant to statutes and to rules of our Supreme Court. See I.C. §§ 1–2208, 2210; I.R.C.P. 82(c)(1), 82(c)(2). If a case exceeds the subject-matter jurisdiction granted a magistrate, it is transferred to another judge of the district court having such jurisdiction. See, e.g., I.R.C.P. 82(e) (counterclaims exceeding jurisdiction).

■ This type of transfer could have been made in the present case. Action by a county upon a medical indigency application is reviewable under the Idaho Administrative Procedure Act (APA). See I.C. § 31–3505. The APA provides that review must be sought by a petition filed in the district court. I.C. § 67–5215(b). However, where administrative action reviewable under the APA is challenged by complaint rather than by a petition for judicial review, the proper court response is not to dismiss the complaint but to treat it as a petition governed by the APA. See Workman Family Partnership v. City of Twin Falls, 104 Idaho 32, 34 n. 1, 655 P.2d 926, 928 n. 1 (1982).

■ Consequently, even if the hospital were deemed to have been aggrieved by the county's administrative action—and therefore should have cast its complaint as a petition for judicial review—failure to do so did not subject the complaint to dismissal. Rather, the complaint should have been treated as a petition for review and processed in conformity with procedures set forth by the APA. Because such a petition would have been outside the scope of subject-matter jurisdiction of a magistrate, it could have been transferred to the district court. Failing that, it would have been proper for the district court on appeal to vacate the judgment below and to proceed upon the petition de novo. But in either event, the complaint need not, and should not, have been dismissed. Therefore, while a limitation upon the hospital's form of action would be relevant to determine whether the district court or the magistrate division was the proper forum to try this case, it would not defeat jurisdiction over the hospital's claim.

### III

■ We now turn to the underlying questions of whether the hospital properly submitted an application and whether the county properly denied it. On the first of these questions, the district court overturned an explicit finding by the magistrate and ruled that the record did not show submission of a written application. We disagree.

Idaho's medical indigency statutes require an application to be made in writing. I.C. § 31–3404. No written application was placed in evidence before the magistrate. However, the hospital contended that such an application had been submitted, that the county had lost it, and that the hospital had neglected to make a copy before submitting it. The hospital presented oral testimony concerning the existence and contents of its application. The record before us does not include the reporter's transcript of such testimony because the district court summarily disposed of the case on appeal, without ordering preparation of a transcript or conducting a trial de novo. The district court, having narrowed the appellate record to exclude evidence concerning the application, overturned the magistrate's finding because it was unsupported by that attenuated record.

With due respect to the district court, we are not deceived by this judicial sleight of hand. The district judge misapplied his authority to limit the appellate record. Such authority is conferred upon district courts by Rule 83(j) of the Idaho Rules of Civil Procedure. The rule makes a reporter's transcript optional and it allows the district court to dispense with both a tran-

script of proceedings below and a trial de novo if the appeal "involves questions of law alone." However, this appeal did not involve questions of law alone. Whether a written application had been submitted was a question of fact.

Seeking to justify the district court's decision, the county has suggested that the hospital's proof of a written application was fatally defective because the application itself had not been put in the record. However, I.C. § 9–411 provides that secondary evidence of a writing is admissible if the original "has been lost or destroyed" or if the original "is in the possession of the party against whom the evidence is offered, and he fails to produce it after reasonable notice." Upon a proper showing that one or both of those conditions had been satisfied, and that no copy of the application was available, the hospital would have been entitled to prove the existence and contents of the application by oral testimony. *See generally* E. CLEARY, McCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE § 241 (2d ed. 1972). By improperly limiting the appellate record, the district court ignored whatever showing may have been made to invoke I.C. § 9–411 and disregarded the secondary evidence of the application itself. Therefore, the district court erred by ruling, upon the limited record, that the hospital had failed to prove the submission of a written application to the county.

## IV

### A

Of course, it is one thing to say that the district court's reasons for reversing the magistrate's judgment were erroneous; it is quite another to say that the magistrate was correct. As we have seen, the district court erred by dismissing the hospital's complaint for lack of jurisdiction. But that does not mean the hospital was entitled to judgment on the merits of its case. Similarly, the district court, confining its review to an improperly limited record, erroneously overturned the magistrate's finding that the hospital had submitted a written appli-cation. But the same deficiency in our record precludes us from sustaining or setting aside the magistrate's finding in the instant appeal. Accordingly, we conclude that the case must be remanded for the district court to consider, upon a proper record, whether a written application was submitted and, if so, whether its contents entitled the hospital to the aid sought on behalf of the patient.

Upon receiving this case, the district court will be required to choose whether to conduct an appellate review of the full record in the magistrate division or to conduct a trial de novo. The availability of those choices will turn upon the final question presented in this appeal—whether a written application, if made, should be deemed approved for lack of a written denial by the county. If the answer to this question were affirmative, then a trial de novo in the district court would be unnecessary, albeit permissible, because the hospital would not have been aggrieved by any action denying its application. Consequently, the hospital would not have been required to seek the judicial review of administrative action available only in district court. The hospital simply could have sued—as it did—for the amount due on the implicitly approved application. *See* I.C. § 31–1513. The magistrate division would have had proper jurisdiction over such a suit and the district court could, if it chose, limit itself to appellate review of the record below. On the other hand, if an application were *not* deemed approved for lack of a written denial, then a trial in the district court would be necessary because the hospital would be aggrieved by oral denial of its application and only the district court could undertake judicial review of such administrative action.

### B

■ Our analysis of the notice question begins with the first paragraph of I.C. § 31–3505:

If the board of county commissioners fails to act upon an application within sixty (60) days from the receipt of said

application, it shall notify the applicant in writing, or upon its failure to give notice within said time, the application shall be deemed approved, and the applicant entitled to payment as if said application had been approved.

To apply this statute in the present case, we must determine initially whether its meaning is clear or ambiguous. If it is clear, then we read the statute literally, neither adding nor taking away anything by judicial construction. But if it is ambiguous, then we must go outside the language of the statute itself to ascertain and to effectuate the legislative intent. *Knudson v. Boundary County School District*, 104 Idaho 93, 656 P.2d 753 (Ct.App.1981).

In our view, the statute is ambiguous. It requires written notice—but notice of what? The hospital would read the statute to require notice of approval or denial of an application. However, the statute also might be read narrowly to require only notice that the commissioners have been unable to act upon an application within sixty days. We must resolve this ambiguity, consistent with our perception of the legislative intent.

■ Indicia of legislative intent may be "collected from the context [of a statute], from the occasion and necessity of the law, from the mischief felt, and the remedy in view." *Noble v. Glenns Ferry Bank, Ltd.*, 91 Idaho 364, 367, 421 P.2d 444, 447 (1966) (quoting *Offield v. Davis*, 100 Va. 250, 40 S.E. 910, 912 [1902]). In this case, the "occasion" is the enactment of the statute in 1976 as an amendment to a predecessor statute passed in 1974. The 1974 version of I.C. § 31–3505 provided, in pertinent part, as follows:

If the *clerk* of the board of county commissioners fails to file a *certificate* with the board in the case of a medically indigent person ... within thirty (30) days of the receipt of said application, he shall notify the applicant in writing, stating his reasons for his failure to file said certificate, or upon his failure to give notice within said time, the application

shall be deemed granted.... [Emphasis added.]

Comparison of the two statutes readily discloses a legislative intent to shift responsibility for approving or denying medical indigency applications from the county clerk to the board of county commissioners. This intent also is manifested elsewhere in the 1976 legislation, where I.C. § 31–3405 was amended to provide that the clerk "immediately investigate, or cause to be investigated, the grounds of such application, and ... file a statement of his findings with the board of county commissioners...." *See* 1976 Idaho Sess.Laws ch. 121, pp. 462, 464. We do not know what experiences under prior law may have induced the Legislature to make this change in 1976. But whatever the "necessity" or the "mischief felt," the "remedy in view" was to eliminate the clerk's power to approve an application by filing a certificate or to deny an application by refusing—with proper notice and explanation—to file the certificate.

This shift in decision-making power incidentally affected the means by which medical indigency decisions were entered in the public record. Because the 1976 statute vested this power in the board of county commissioners, it eliminated the need for any "certificate" to be filed with the commissioners by the clerk. The 1976 statute did not retain a counterpart to the clerk's certificate. Consequently, there is no document, other than the commissioners' minutes and notice to the applicant, if any, which sets forth the decision on the application.

Under the certificate process, a public record was made and an applicant specifically was notified within thirty days whether his application had been approved—and, if not, why not. When the statute was amended in 1976, it simply conjoined in a single sentence a reference to the commissioners' failure "to act" and a reference to the notice to be furnished an applicant. Thus, the inartful language chosen by the Legislature to effect a shift of decision-making power from the clerk to the board

of county commissioners produced the present ambiguity concerning the nature of notice required.

In our view, a change in the locus of decision-making power does not require, nor does it necessarily imply, an intended change in the means by which notice of a decision is given. Accordingly, we do not infer from the 1976 amendment that the Legislature intended to replace the definitive notice provided in the 1974 law—a notice which plainly informed the applicant of the outcome of his application—with an obscure notice merely advising the applicant that the commissioners have not acted. An applicant entitled to no better notice than that might wait from here to eternity to learn the outcome of his application. Rather, we believe the Legislature, by retaining the written notice requirement and by extending from thirty to sixty days the time to examine an application before giving such notice, contemplated that the notice would continue to be definitive.

Moreover, the underlying necessity for definitive, timely notice had not changed between 1974 and 1976. Such a notice serves to inform the applicant whether the county's action has been favorable or adverse, so that he might seek judicial review if necessary. In 1974, review was by direct appeal to the district court and the time for filing a notice of appeal began with service of the clerk's notice of refusal to file the certificate. Thus, the notice represented not only an administrative disposition of the application but also started the "clock" running for court proceedings. The 1976 statute has replaced a direct appeal to the courts with a petition for judicial review, to be processed in accordance with the APA. Idaho Code § 67–5215(a) provides that such a petition for judicial review may be filed by a person "aggrieved" by a final decision of the administrative agency. In order for a person to know whether or not he is "aggrieved" by administrative action, he must know what that action is. A notice of nonaction would not suffice, unless failure to act carried a specific, dispositive consequence. By parity of reasoning, failure to give the notice itself would leave an applicant in limbo unless it carried a discrete consequence.

It is beyond the scope of this case—and we need not decide today—what consequence should flow from a notice of nonaction. But where, as here, the issue is lack of notice itself, the Legislature has provided a clear answer. The answer has been declared unambiguously in both the 1974 and 1976 statutes: the application is "deemed" approved. The Legislature in both statutes also has specifically provided that the notice must be "in writing." The requirement that notice be in writing complements the requirement that an application be in writing. It facilitates judicial review by assuring a record of action taken by the county and by fixing the point in time when such review becomes available. These important purposes justify strict application of the Legislature's directive that an application be deemed approved if notice of its denial is not timely furnished in writing.

■ Accordingly, we hold that the 1976 version of I.C. § 31–3505 requires the board of county commissioners, within sixty days from receipt of a medical indigency application, to notify the applicant in writing of the action taken on his application. Absent such written notice, the application is deemed approved. In this case, the commissioners did not notify the hospital in writing of their action. Rather, they orally informed the hospital that the claim was denied. Consequently the application—if in fact a proper application was made in writing—must be deemed approved.

C

This conclusion clarifies the district court's choices upon remand. It means that the hospital has not been "aggrieved" by the county's administrative action. Therefore, the hospital was not compelled to petition for judicial review in the district court. It was entitled to file a complaint for money due, and the magistrate division had jurisdiction to enter judgment upon the complaint. Accordingly, the district court

**150**

upon remand is free to examine the question of whether a proper, written application was filed, *either* upon the full record or in a trial de novo. If the district court undertakes an appellate review of the record and upholds the magistrate's finding that the hospital submitted a proper, written application, or if the district court makes a similar finding upon a trial de novo, then the court is directed to affirm the judgment for the hospital. On the other hand, if the district court, either upon appellate review of the record or upon a trial de novo, determines that a proper, written application was not submitted, then it should reenter its prior order directing that the hospital's complaint be dismissed.

The district court's present order of dismissal is vacated and the case is remanded for further proceedings consistent with this opinion. Costs to the appellant, St. Benedict's Hospital. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.