712 P.2d 582

**IDAHO FALLS CONSOLIDATED HOSPITALS, INC., a nonprofit Idaho corporation, Plaintiff-Appellant,**

v.

**BOARD OF COMMISSIONERS OF JEFFERSON COUNTY, Idaho, Defendant-Respondent.**

No. 15836.

Supreme Court of Idaho.

Dec. 17, 1985.

882

Larry L. Goins and Frederick G. Zundel, Idaho Falls, for appellant.

Robin D. Dunn, Rigby, for respondent.

HUNTLEY, Justice.

The Hospital admitted Louisa Gaitan for emergency surgery and later billed her $5,999.25. The Gaitans had no medical insurance. Mrs. Gaitan and her church each paid $150, leaving a principal balance of $5,699.25. Mrs. Gaitan anticipated future medical expenses of $800 for false teeth, $2,500 for a cardiac catheterization, and $16,000 for possible mitral valve replacement.

Mrs. Gaitan and her husband resided in a home on three and one-half acres in Jefferson County, valued by the County Assessor at $17,905. They owned two vehicles with a total value of $300. They also had $236.17 in a checking account and $1,873.45 in savings which represented money their son gave them to help pay for Mrs. Gaitan's anticipated dental work and heart catheterization. Unable to work, the Gaitans received only a total fixed monthly income in Social Security and Railroad Retirement benefits of $523.45. Louisa testified that their monthly expenses fully consumed their income.

The Gaitans applied to the County for financial assistance under the Idaho medical indigency statutes. The County found that the Gaitans were not medically indigent and denied their application. The Hospital intervened and requested a rehearing. Again, the County found that the Gaitans were not medically indigent. The Hospital appealed to the district court, which affirmed the County's finding. The district court reasoned that the Gaitans' ownership of a home with an assessed value in excess of their medical bills precluded them from achieving medical indigency status. The Hospital appealed to this Court. We reverse.

■ The Hospital argues that the Gaitans' retirement income and home and bank accounts are not resources that may be considered in a determination of "medical indigency," as the Idaho Code defines that term.

(1) "Medically indigent" means any person who is in need of hospitalization and who, if an adult, together with his or her

spouse, ... does not have *income and other resources available to him from whatever source* which shall be sufficient to enable the person to pay for necessary medical services. (Emphasis added.) I.C. § 31–3502(1) (1983).

The Hospital argues that income and assets immune to levy or attachment cannot be considered "resources available." Otherwise, if a medical debtor were found to be not medically indigent, yet failed to pay the Hospital, the County would have no statutory obligation to pay, and the Hospital would remain unpaid, being unable to levy or attach the income and assets of the debtor. The Idaho legislature has provided a homestead exemption of $25,000. I.C. §§ 55–1004 (1983) and 55–1201(1) (1983). (A homestead includes both a dwelling house and the underlying land. I.C. § 55–1001 (1983).) Uncontradicted testimony based on a Jefferson County assessor's report valued the Gaitans' homestead at $17,905. The Hospital concludes that the Gaitans' homestead was not a "resource available."

The County responds that the broad language of I.C. § 31–3502(1), defining "medically indigent," encompasses resources available "to him," the debtor, "from whatever source," whether or not creditors can reach that source. The Gaitans' retirement income, homestead, bank accounts, and vehicles were resources available to the Gaitans "from whatever source," according to the County.

We ascertain the legislative intent of I.C. § 31–3502(1) (1983) by considering its language and the broad context in which it was written, including related provisions. *Messenger v. Burns*, 86 Idaho 26, 29–30, 382 P.2d 913, 915 (1963). One related provision says the medical indigency statutes' purposes are to provide suitable hospital facilities to the public and to assure hospitals of payment of indigent persons' medical bills. I.C. § 31–3501 (1983). In light of these legislative purposes, the County should not have considered either the equity in the Gaitan home below the homestead exemption or the Gaitans' Social Security

and Railroad Retirement benefits in making a determination on the issue of medical indigency. To consider these assets and income as "resources available" would lead to anomalous results: The County found the Gaitans not medically indigent, primarily because of the value of the Gaitans' homestead and retirement benefits. If that decision stood and the Gaitans then failed to pay the Hospital's bill, the Hospital could not attach the homestead or levy on the retirement benefits. Also, it could not look to the County for reimbursement, the time for making a claim having by then expired. The Hospital would therefore not receive payment, which might reduce its ability to provide suitable hospital facilities to the public. *See, Braun v. Ada County*, 102 Idaho 901, 904, 643 P.2d 1071, 1075 (1982). This result would defeat the express legislative purposes of the medical indigency statutes.

The County argues the legislature had a secondary purpose of encouraging persons to pay their own medical debts out of "resources available to [them] from whatever source," before looking to the County for assistance, even if such resources were immune to attachment or levy. However, we doubt the legislature that put certain resources out of the reach of all creditors intended to encourage debtors who would be medically indigent but for those very resources to voluntarily pay hospital creditors out of those resources.

The County further contends that the Gaitans' failure to file a declaration of homestead under I.C. § 55–1203 (1983) left the homestead vulnerable to attachment and it was therefore a "resource available," despite the general homestead exemption set out in I.C. § 55–1004. However, the Gaitans could invoke the protection of the homestead exemption by filing a declaration of homestead prior to the attachment of any lien on their home. *Messenger*, 86 Idaho at 31–32, 382 P.2d at 918–19; *see*, I.C. § 55–1005(1) (1983).

■ State and federal law exempted the Gaitans' Social Security and Railroad Retirement benefits from levy or similar legal

process. 42 U.S.C. § 407 (1983); 45 U.S.C. § 231m (1983); *Philpott v. Essex County Welfare Board,* 409 U.S. 413, 415–16, 93 S.Ct. 590, 592, 34 L.Ed.2d 608, 611, (1973); I.C. § 11–603(3) (1983). As with the homestead, the district court erred in affirming the County's consideration of this income as a "resource available" for purposes of determining medical indigency.

 The Gaitans' remaining property included two vehicles with a total combined value of $300,[1] a $236.17 checking account, and a $1,873.45 savings account. The Hospital argues that the Gaitans' son gave them the money in the savings account to help pay for false teeth and a heart catheterization needed by Mrs. Gaitan. Arguably, this impressed a constructive trust upon the money precluding it from consideration as a "resource available." We do not decide this issue, which is a matter for an evidentiary hearing if and when the County should seek reimbursement from the Gaitans. Likewise, at any such hearing the issues can be litigated as to whether $17,905 is the full value of the home and whether the entire three-and-one-half acres is required as a part of the homestead.

If a state or federal law does not prohibit creditors from reaching a given resource (including income) of a medical debtor, and the resource's fair market value (exclusive of liabilities) exceeds its liabilities, and the debtor can readily convert the resource into cash, then the resource is "available" under I.C. § 31–3502(1) (1983) for the purpose of determining medical indigency. *See, Intermountain Health Care, Inc. v. Board of County Commissioners of Blaine County,* 109 Idaho 412, 707 P.2d 1051. Assuming without deciding that the Gaitans' "resources available" included their two vehicles and checking and savings accounts, the balance of $5,699.25 due the Hospital exceeded the $2,409.62 in "resources available" to the Gaitans. No one could have reasonably expected the Gaitans to fully pay the Hospital's bill out of these resources in a reasonable time. Therefore,

the Gaitans were medically indigent as a matter of law. *See, Carpenter v. Twin Falls County,* 107 Idaho 575, 584–86, 691 P.2d 1190, 1198–1201 (1984).

Reversed.

Costs to appellant. No attorney fees awarded.

DONALDSON, C.J., and BISTLINE, J., concur.

SHEPARD, J., dissents without opinion.

BAKES, J., dissents.

---

1. I.C. § 11–605(3) (1983) entitles an individual "to an exemption of one (1) motor vehicle to the extent of value not exceeding five hundred dollars ($500)."