776 P.2d 443

**UNIVERSITY OF UTAH HOSPITAL on Behalf of Terry SCARBERRY, Plaintiff–Appellant,**

v.

**BOARD OF COUNTY COMMISSION- ERS, Clerk and County of Gem, Defendants–Respondents.**

No. 16574.

Supreme Court of Idaho.

June 21, 1989.

Dean Williams, Blackfoot, Idaho, for plaintiff-appellant.

H. Ronald Bjorkman, Emmett, Idaho, for defendants-respondents.

BISTLINE, Justice.

This is an appeal from a decision of the district court which affirmed Gem County's denial of reimbursement for emergency medical care of an indigent. We affirm in part and remand.

On July 10, 1984, Terry Scarberry, an employee on a farm, was moving sprinkler pipe which came into contact with a high voltage electrical line. Scarberry suffered serious injury from burns. One of his legs had to be amputated above the knee. Emergency treatment was received at the University of Utah Hospital in Salt Lake City. The hospital billed Scarberry for approximately $70,000.

Scarberry was discharged from the hospital on August 20, 1984. At that time, he and his wife had assets which included only a car and a small house trailer. The owner of the farm where Scarberry was working had insurance coverage under a homeowners liability policy.

On January 16, 1985, Scarberry settled with the insurance carrier and was paid the policy limits of $100,000. Negotiations between Scarberry and the hospital for payment of his bill ensued. Scarberry offered to pay $500 a month on his bill, but the hospital refused the offer.

On February 11, 1985, the hospital's attorney wrote a letter to Scarberry's attorney which stated that a hospital lien had been filed against any insurance payments due to Scarberry. Neither the letter nor anything in the record makes it clear where the lien was filed or whether the lien was filed pursuant to the Idaho statutes or the Utah statutes. On or about March 6, 1985, the hospital filed a complaint in Ada County against Scarberry, his attorney, and a trust officer who was administering a trust created from the insurance proceeds. The complaint sought payment of the hospital

bill from the insurance proceeds. The complaint also sought a restraining order and writ of attachment directing the county sheriff to levy upon the insurance funds being held in trust for the benefit of Scarberry. Nothing in the record establishes that the hospital was successful in persuading the court to order a writ of attachment on the trust fund consisting of the insurance proceeds.

Scarberry paid nothing on the hospital bill but rather on April 4, 1985, filed a petition in bankruptcy. At that date the Scarberrys had spent $15,000 of the settlement and claimed the remaining $85,000 as exempt from their creditors. In the bankruptcy petition the mobile home purchased by the Scarberrys was listed as an asset but was claimed exempt from attachment or levy by Scarberry's creditors through the homestead exemption provided by I.C. § 55–1201. The trust fund created from the insurance proceeds was listed as an asset but was claimed exempt as proceeds of a personal injury award reasonably necessary for the current and future support of Scarberry and his dependents under I.C. § 11–604(1)(c) (Supp.1988).

Thereafter on April 22, 1985, the hospital first filed an application in Gem County for the payment of Scarberry's expenses. *See* I.C. § 31–3501, *et seq.* That application was not filed until eighteen days after the bankruptcy court had isolated Scarberry's assets and placed them beyond the reach of his creditors. The hospital's application was summarily denied by the county commissioners on the basis that Gem County was not the obligated county. At the hospital's request a hearing was held before the county commissioners following which the commissioners filed their order denying the claim.

The commissioners held that Scarberry was not a medically indigent person and that a timely application had not been filed. Acting in its appellate capacity, the district court disagreed; it concluded that Scarberry had been medically indigent from the time of his accident, July 10, 1984, but also denied relief since the hospital's application had not been timely filed.

The hospital, pursuant to the medical indigency statutes, must file a claim within thirty days of the time a patient first becomes medically indigent, I.C. § 31–3501, or within forty-five days of the patient's admission to the hospital. The hospital brings this appeal challenging the district court determination dismissing the application for untimeliness.

Idaho Code § 31–3504 provides as follows:

Time for filing applications—Notice to counties.—An application for or on behalf of a medically indigent person receiving emergency medical services may be made any time within forty-five (45) days following the admission of said person to the hospital furnishing said care. If a person becomes medically indigent subsequent to admission to a hospital or subsequent to receiving treatment by a hospital, an application for the person, or on his behalf, shall be made within thirty (30) days of the time the person becomes medically indigent. The chargeable county or counties shall be notified as soon as practicable upon the hospital's obtaining information disclosing that a patient is medically indigent.

Idaho Code § 31–3502(1) defines a medically indigent person as follows:

'Medically indigent' means any person who is in need of hospitalization, and who, if an adult, together with his or her spouse, ... does not have income or other resources available to him from whatever source which shall be sufficient to enable the person to pay for necessary medical services.

■ It is readily apparent that the timeliness of an application is dependent upon the time at which a patient of a hospital, doctor, or other health provider becomes medically indigent. In determining the resources of a medically indigent person, a resource must have a positive value greater than its liabilities, encumbrances, and indebtedness, and must be liquid and readily convertible into cash. *Intermountain Health Care, Inc. v. Board of County Commissioners of Blaine County,* 109 Idaho 299, 303, 707 P.2d 410, 414 (1985).

However, any assets which are exempt from attachment or levy cannot be considered as resources available. *Idaho Falls Consolidated Hospital v. Board of Commissioners of Jefferson County*, 109 Idaho 881, 712 P.2d 582 (1985).

In *Idaho Falls Consolidated Hospital*, Justice Huntley, writing for the Court, considered whether a medically indigent's home, social security and railroad retirement benefits could be considered in a determination of a patient's medically indigency status. In considering these assets the opinion provided a cogent statement of the purposes of our medical indigency statutes. The opinion also offered a persuasive rationale regarding why assets which are exempt from attachment and levy should not be considered in making the determination of medical indigent status:

> We ascertain the legislative intent of I.C. § 31–3502(1) (1983) by considering its language in the broad context in which it was written, including related provisions. (citation omitted.) One related provision says the medical indigency statutes are to provide suitable hospital facilities to the public and to insure hospitals of payment of indigent persons' medical bills. I.C. § 31–3501 (1983) [*accord, Braun v. Ada County*, 102 Idaho 901, 904, 643 P.2d 1071, 1074 (1982)]. In light of these legislative purposes, the County should not have considered either the equity in the Gaitan home below the homestead exemption or the Gaitan's Social Security and Railroad benefits in making a determination of the issue of medical indigency. To consider these assets and income as "resources available" would lead to anomalous results: The County found the Gaitans not medically indigent, primarily because of the value of the Gaitans' homestead and retirement benefits. If that decision stood and the Gaitans then failed to pay the hospital's bill, the hospital could not attach the homestead or levy on the retirement benefits. Also, it could not look to the county for reimbursement, the time for making a claim having by then expired. The hospital would therefore not receive payment, which might reduce its ability to provide suitable hospital facilities to the public. (citation omitted) This result would defeat the express legislative purposes of the medical indigency statutes.

*Idaho Falls Consolidated Hospital*, 109 Idaho at 883, 712 P.2d at 584.

In this case the trial court correctly analyzed Scarberry's sources of income and assets and properly determined that he became and remained medically indigent from the moment he entered the hospital. At the time of his hearing before the county commissioners, Scarberry received $158 per month from social security, which is exempt property under I.C. § 11–603(3). Scarberry's mobile home was exempt from levy or attachment under I.C. § 55–1201, *et seq*. This asset was specifically listed in Scarberry's bankruptcy petition and the homestead exemption was claimed. There is nothing in the record establishing that there was any lien of the hospital's which attached to the home prior to the claim of homestead exemption. *See* I.C. § 55–1005(1). Also claimed as exempt in Scarberry's bankruptcy petition was a trust fund created from the insurance proceeds pursuant to I.C. § 11–604(1)(c). This exemption may be perfected within seven days after any attachment or levy is sought upon the property. *See* I.C. § 11–608. As mentioned above at page 2, the hospital made an attempt to reach the insurance proceeds by filing a lien against the same. However, there is nothing in the record to establish that the attempt to attach was successful; and the insurance proceeds trust fund was declared exempt by the bankruptcy court. Finally, Scarberry's car is exempt property pursuant to I.C. § 11–605.

Thus, virtually every asset or source of income belonging to Scarberry was exempt from attachment or levy by any of his creditors. This circumstance falls precisely within the situation envisioned by Justice Huntley in *Idaho Falls Consolidated Hospital*, 109 Idaho 881, 712 P.2d 582 (1985), *i.e.*, that if the county's decision that Scarberry was not medically indigent were permitted to stand, the hospital then could not

attach or levy upon these exempt sources of income or assets. The hospital would not receive payment and this result would defeat one of the express legislative purposes of the medical indigency statutes. Therefore, the district court was correct in determining that Scarberry was medically indigent from the moment at which he entered the hospital for his emergency care on July 10, 1984, and that, as a result, the hospital's application which was filed on April 22, 1985, with Gem County was not a timely application.

 It should be borne in mind that if providers of medical care are ever in doubt as to a patient's potential indigency status, I.C. § 31–3504, quoted above, provides that the hospital may protect itself by filing an application for a patient receiving emergency medical services any time within forty-five days after the admission of the patient. Following the initial filing, a hospital may renew its application every thirty days with the appropriate county. Such a procedure would guarantee that the hospital's rights would be protected at minimal cost. The situation here is analogous to one in the area of commercial law where a party desiring to perfect an Article 9 security interest will choose to file a financing statement with the Secretary of State's office if there is any doubt that such a filing is necessary in order to perfect the security interest. The principle is one of "when in doubt, file." Similarly, a hospital may protect itself, upon receiving an emergency medical patient, and having performed a routine examination of the patient's resources available for payment such as insurance, by filing an application with the obligated county if there is any doubt concerning the patient's potential medical indigency.

 However, while we affirm the trial court's determination of Scarberry's date of medical indigency and the court's related ruling that the hospital's application was not timely, this does not end the inquiry. In *Carpenter v. Twin Falls County*, 107 Idaho 575, 691 P.2d 1190 (1984), this Court held that an untimely application pursuant to I.C. § 31–3504 does not necessarily defeat a claim for benefits:

> The County also argues that the district court erred in requiring the Commissioners to honor the Carpenter application because the County was not given timely notice of the emergency medical services provided as is required under I.C. § 31–3504 ... [H]owever, nothing in the statutes provides that the claim may be denied if such notice has not been provided by the hospital.... [W]e hold that the failure to provide the notice contemplated by I.C. § 31–3504, does not necessarily defeat a claim for benefits. (Citations omitted). Furthermore, we agree with the district court that the failure to provide notice could not serve as a ground for denying benefits in this case where the County was not prejudiced by the lack of notice.

*Carpenter v. Twin Falls County*, 107 Idaho at 582–583, 691 P.2d at 1197–1198. *Contra, Caldwell Memorial Hospital v. Board of County Commissioners*, 107 Idaho 33, 684 P.2d 1010 (Ct.App.1984) (decided five months before *Carpenter*).

There is an incorrect suggestion in our case law that the time requirements of I.C. § 31–3505 are to be strictly enforced upon a medically indigent applicant. This incorrect notion is based upon dicta found in *Braun v. Ada County*, 102 Idaho 901, 905 n. 5, 643 P.2d 1071, 1075 n. 5 (1982), wherein it was stated that the Idaho Medical Indigency Statutes imposed strict time and procedural requirements for filing claims with the counties. In that case the timeliness of an application pursuant to I.C. § 31–3504, which is here at issue, was not at issue. Therefore, the statement is mere dicta.

This dicta was then picked up in a later case, *Ottesen v. Board of Commissioners of Madison County*, 107 Idaho 1099, 1101, 695 P.2d 1238, 1240 (1985). The statement also finds expression in a Court of Appeals case, *University of Utah Hospital v. Ada County*, 111 Idaho 1023, 1025, 729 P.2d 1086, 1088 (Ct.App.1987). *See also, St. Benedict's Hospital v. County of Twin Falls*, 107 Idaho 143, 686 P.2d 88 (Ct.App.

1984). However, it is notable that in cases where a medical indigency statute was strictly enforced, the statute to be enforced was I.C. § 31–3505, which provides that an application for medical indigency which is not acted upon by the county in writing within sixty days shall be deemed approved. *See Ottesen,* 107 Idaho 1099, 695 P.2d 1238, and *St. Benedict's Hospital,* 107 Idaho 143, 686 P.2d 88.

It is noteworthy that I.C. § 31–3505, unlike I.C. § 31–3504, provides for a remedy if the county does not act in a timely manner upon a claimant's application. The remedy is that the application is to be deemed approved. In contrast, I.C. § 31–3504 provides for no such remedy or sanction against a medically indigent applicant, or a hospital applying on his or her behalf, for failure to comply with the time requirements of I.C. § 31–3504. This distinction was noted in *Carpenter,* 107 Idaho 575, 691 P.2d 1190, and places the case law interpreting I.C. § 31–3504 in a category separate from those cases such as *Ottesen* and *St. Benedict's Hospital,* which construe I.C. § 31–3505.

The record reveals that the issue of prejudice to the county resulting from the hospital's late application was an issue never raised before the county commissioners, the district court, or before this Court. Pursuant to the language of *Carpenter,* cited above, the issue of prejudice to the county resulting from a lack of notice is one which should be inquired into prior to approving or denying an application for indigent medical emergency assistance. Therefore, this case is remanded to the district court for a determination of whether to remand the action to the county commissioners for a hearing on the issue of prejudice.

Due to the mixed result in this case, no costs or attorney fees are awarded.

HUNTLEY and JOHNSON, JJ., concur.

SHEPARD, J., sat but did not participate due to his untimely death.

BAKES, C.J., concurs and dissents.

BAKES, Justice, concurring in part and dissenting in part:

I disagree with the Court's affirming the district court's conclusion that "Scarberry was medically indigent from the moment at which he entered the hospital for his emergency care on July 10, 1984, ...." At the time that Scarberry entered the hospital he had a tort claim against the owner of the farm where he was employed which was doubtless in excess of the amount for which Scarberry later settled. However, on January 16, 1985, Scarberry chose to settle his case against his employer for the employer's homeowner's insurance policy limits, *i.e.,* $100,000, rather than pursue his claim further against not only the employer's insurance coverage, but against the employer's other assets. Scarberry's tort claim may have been worth a great deal more than $100,000, had he chosen to pursue his claim further against his employer. Accordingly, the conclusion that Scarberry was medically indigent at the time he entered the hospital is based solely on the hindsight of his settlement, and not upon the tort claim which Scarberry had against his employer at the time he was admitted to the hospital.

Further, it is only with the benefit of hindsight that it can be said that at the time Scarberry was hospitalized his tort claim would be settled for the $100,000 insurance proceeds, and that those insurance proceeds would be placed in a trust and held to be exempt by the bankruptcy court in his bankruptcy filing which would occur 9 months after he entered the hospital. Furthermore, until the bankruptcy court actually ruled that the entire amount of the trust fund would be "reasonably necessary for the support of him and his dependents," I.C. § 11–604(1), there was no basis to conclude that Scarberry was medically indigent.

Nevertheless, I concur in that part of the Court's opinion which concludes that, under our decision in *Carpenter v. Twin Falls County,* 107 Idaho 575, 691 P.2d 1190 (1984), the hospital is not absolutely barred from asserting its claim, even if it has not technically met the time requirements of

I.C. § 31–3505. Therefore, I agree with the Court's opinion that the case must be remanded for further proceedings consistent with the *Carpenter* decision.