824 P.2d 915

**UNIVERSITY OF UTAH HOSPITAL and Terry L. Scarberry, Plaintiffs–Appellants,**

v.

**BOARD OF COUNTY COMMISSIONERS, Clerk and County of Gem, Defendants–Respondents.**

No. 18998.

Court of Appeals of Idaho.

Jan. 31, 1992.

Petition for Review Denied March 3, 1992.

application to Gem County's Board of Commissioners seeking medical indigency benefits for the payment of Scarberry's hospital bill under I.C. § 31–3501 to –3519 (Idaho's medical indigency statutes). The Board denied the application on grounds that Scarberry was not medically indigent and that the application was untimely. On appeal, the Supreme Court upheld the Board's findings of indigency and untimeliness, but held that an untimely application by itself was insufficient grounds to deny the claim for medical indigency benefits. The Supreme Court held that the County must show some prejudice as a result of the untimeliness of the application before it can deny the application on untimeliness grounds. On remand, the Board again denied the application, finding that the County had been prejudiced by the untimeliness of the application. The district court affirmed this finding, and the Hospital appeals. We affirm.

## ISSUE

The sole issue on appeal is whether the Board erred in finding that the untimeliness of the Hospital's application for medical indigency benefits prejudiced the County, justifying the Board's denial of the application.

## STANDARD OF REVIEW

Idaho Code § 67–5215(g) sets forth the standards for judicial review of final agency decisions as follows:

(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) in violation of constitutional or statutory provisions;

(2) in excess of the statutory authority of the agency;

Dean Williams, Blackfoot, for plaintiffs-appellants.

Richard K. Linville, Emmett, for defendants-respondents.

SILAK, Judge.

Terry Scarberry, a resident of Gem County, was seriously injured while at work on his employer's farm. He subsequently received emergency medical treatment and services from the University of Utah Hospital. The Hospital later made an

(3) made upon unlawful procedure;

(4) affected by other error of law;

(5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Thus, our review of final agency decisions is limited under I.C. § 67–5215(g), and we are not obliged to reverse or modify an agency decision unless substantial rights of an individual have been prejudiced because the administrative findings and conclusions are in violation of statutory or constitutional provisions, clearly erroneous, arbitrary and capricious, or characterized by an abuse of discretion. *Morgan v. Idaho Dept. of Health and Welfare,* 120 Idaho 6, 8–9, 813 P.2d 345, 347–48 (1991); *see also State ex rel. Richardson v. Pierandozzi,* 117 Idaho 1, 3, 784 P.2d 331, 333 (1989); *H & V Eng'g, Inc. v. Idaho State Bd. of Professional Engrs. & Land Surveyors,* 113 Idaho 646, 649, 747 P.2d 55, 58 (1987).

## FACTS AND PROCEDURAL BACKGROUND

On July 10, 1984, Scarberry was moving an irrigation line on his employer's farm when it came into contact with a high voltage power line. He was rendered unconscious, with the electrically charged irrigation line on top of his leg. Scarberry was taken to Saint Alphonsus Regional Medical Center in Idaho for treatment; however, due to the seriousness of his injury, he was later transported to the University of Utah Hospital for treatment. The burns on Scarberry's leg were so severe that, in order to save his life, the leg had to be amputated above the knee. When he was discharged from the Hospital on August 20, 1984, Scarberry's bill for the Hospital's services totalled $70,633.87.

Idaho's medical indigency statutes provide that persons who are medically indigent[1] may apply for aid from the county where they reside for the payment of their medical bills. In this case, the district court determined, and the Supreme Court affirmed, that Scarberry was medically indigent at the time of his admission to the Hospital on July 10, 1984. Idaho Code § 31–3504 provides that "[a]n application for or on behalf of a medically indigent person receiving emergency medical services may be made any time within forty-five (45) days" following the person's admission to the hospital. Under this provision, the Hospital had until August 24, 1984, to make a timely application to the County for medical indigency benefits on behalf of Scarberry.

On January 16, 1985, Scarberry settled his claims against his employer for the employer's homeowner's policy limits of $100,000. On January 21, 1985, after learning of Scarberry's settlement, the Hospital filed a hospital lien in Utah in an effort to prevent disbursement of the funds without payment to the Hospital. At this time, the Hospital also notified Scarberry's employer and his employer's insurer of this lien. By this time, however, Scarberry had already spent $15,000 of the settlement money and had put the remaining $85,000 in a trust.

In March of 1985, the Hospital filed suit against Scarberry seeking payment for the services and treatment rendered. On April 4, 1985, Scarberry filed a petition for relief in bankruptcy. The remaining $85,000 of the settlement proceeds which had been placed in trust were determined by the bankruptcy court to be exempt from execution by Scarberry's creditors.

On April 22, 1985—eight months past the forty-five day deadline—the Hospital filed an application with Gem County for medical indigency benefits to obtain payment of Scarberry's hospital bill. On that same day, the Board denied the Hospital's application on the ground that Gem County was not the obligated county. The Hospital then requested a hearing, after which the

---

1.  Idaho Code § 31–3502 defines "medically indigent" as follows:

    [A]ny person who is in need of hospitalization and who, if an adult, together with his or her spouse, ... does not have income and other resources available to him from whatever source which shall be sufficient to enable the person to pay for necessary medical services.

Board again denied the Hospital's application, finding this time that the application had not been timely filed.

After a second evidentiary hearing, the Board again denied the Hospital's application, making an additional finding that Scarberry was not medically indigent. The Hospital then filed a notice of appeal to the district court, challenging the Board's findings and conclusions. Although the district court found, contrary to the Board, that Scarberry had been medically indigent from the date of his injury, the district court affirmed the Board's denial of the Hospital's application on the basis that the application for medical indigency benefits had not been timely filed.

On further appeal, the Supreme Court affirmed the district court with respect to the findings of indigency and untimeliness, but held that a finding of untimeliness by itself is not sufficient grounds for denying medical indigency benefits to an applicant. *Univ. of Utah Hosp. v. Bd. of County Comm'rs*, 116 Idaho 434, 776 P.2d 443 (1989). Rather, the Court held that, in order to deny benefits based on the application's untimeliness, the County must show that it was prejudiced by the untimeliness.

On remand, the Board found that the County had been prejudiced by the Hospital's untimely filing, because, had the Hospital's application been timely, the County could have paid the benefits and become subrogated to various rights under Scarberry and the Hospital, which rights Scarberry and the Hospital no longer possessed by the time of the Hospital's untimely filing. On appeal, the district court affirmed the Board's finding of prejudice. The Hospital now appeals the district court's affirmance. We also affirm the Board's decision.

## DISCUSSION

The County claims that the Hospital's untimely filing prejudiced its potential rights as subrogee to Scarberry and the Hospital. Idaho Code § 31–3510 provides the following:

Upon payment of charges for hospitalization of a medically indigent person, the county making such payment shall become subrogated to all the rights of the hospital and to all rights of the medically indigent person against any third parties who may be liable for such hospitalization.

Thus, by paying indigency benefits to satisfy Scarberry's hospital bill, the County would have become subrogated to Scarberry's rights against third parties who might have been liable for Scarberry's hospitalization. "Subrogation, in its broadest sense, is the substitution of one person for another, so that he may succeed to the rights of the creditor in relation to the debt or claim and its rights, remedies and securities." *Houghtelin v. Diehl*, 47 Idaho 636, 639, 277 P. 699, 700 (1929). If it had paid the charges for Scarberry's hospitalization, the County would have stood in the shoes of Scarberry and the Hospital, and succeeded to their rights, remedies and securities against Scarberry's employer with respect to the hospitalization charges.

We can determine whether the County was prejudiced by the Hospital's untimely application by examining the rights that the County, as subrogee, might have acquired by paying Scarberry's hospital bill in August of 1984, pursuant to a timely application, and comparing those rights with the rights the County would have acquired upon payment of Scarberry's hospital bill in April of 1985, when the Hospital finally applied to the County for indigency benefits. If the County had become subrogated to greater rights by paying benefits pursuant to a timely application than it would have by paying benefits pursuant to an untimely application, then the County was prejudiced by the untimeliness of the application, and the County was justified in denying the application.

Had the Hospital's application for indigency benefits been timely, the County could have become subrogated to Scarberry's rights as early as August, 1984. Prior to the settlement on January 16, 1985, Scarberry had various claims against his employer, including a claim for hospital expenses. If the County had become subrogated to Scarberry's rights in August of

1984, the County would have succeeded to Scarberry's claim for his hospital charges against his employer. As Scarberry's subrogee, the County could have brought a claim for the hospitalization charges in its own name, and recovery on that claim would not have been limited to the proceeds of the employer's homeowner's insurance policy, but would have extended to the other assets of Scarberry's employer as well.[2]

On the other hand, had the County become subrogated to Scarberry's rights in April of 1985, pursuant to the Hospital's untimely application, the County would not have become subrogated to any rights against Scarberry's employer. This is because, after the settlement of January 16, 1985, Scarberry no longer had any rights or claims against his employer, having released his employer from all liability for his injuries. Thus, the Hospital's delay in applying for the indigency benefits prejudiced the County's rights of subrogation, because, by the time the Hospital made its untimely application, the County could no longer become subrogated to the same rights against Scarberry's employer that it could have become subrogated to, had the Hospital's application been timely.

The Hospital claims the County was not prejudiced by the untimeliness of the application because the $100,000 insurance proceeds which Scarberry received in settlement were at all times exempt from execution and levy by Scarberry's creditors under I.C. § 11–604(1)(c). The Hospital argues that because these funds were exempt from creditors, the County could have acquired no right to any of those funds either before or after the settlement, and

thus, the untimeliness of the application had no prejudicial effect on the County's rights. We disagree.

The County, had it become subrogated to Scarberry's rights prior to Scarberry's settlement with his employer, would not have been in the position of a creditor seeking to execute on the proceeds of a judgment, settlement, or insurance payable to Scarberry. Rather, as subrogee, the County would have been able to sue Scarberry's employer in the place of Scarberry, having already paid the amount owed to Scarberry and the Hospital for Scarberry's hospitalization. For the purposes of section 11–604(1)(c), the County would have been a subrogee of Scarberry, the legal payee of the settlement proceeds, rather than a creditor seeking to execute on proceeds payable to the legal payee. Thus, prior to the settlement, section 11–604(1)(c) would not have applied to prevent the County, had it become subrogated to Scarberry, from suing Scarberry's employer to recover the amount of Scarberry's hospital expenses.

It is true that once Scarberry received the settlement proceeds, and those proceeds were determined to be reasonably necessary for the support of Scarberry and his dependents, the County would have been prohibited from executing on those proceeds. However, this is because after the settlement the County would not have become subrogated to any rights against Scarberry's employer, even if the County had paid indigency benefits to satisfy Scarberry's hospital charges. After the settlement, Scarberry had no rights against his employer to which the County could have become subrogated.[3] Thus, Scarberry's

---

**2.** In the Supreme Court's earlier review of this case, Chief Justice Bakes recognized the distinction between the value of Scarberry's pre-settlement claims and the value of the amount Scarberry chose to settle the claims for:

> At the time that Scarberry entered the hospital he had a tort claim against the owner of the farm where he was employed which was doubtless in excess of the amount for which Scarberry later settled. However, on January 16, 1985, Scarberry chose to settle his case against his employer for the employer's homeowner's insurance policy limits, *i.e.,* $100,000, rather than pursue his claim further against

> not only the employer's insurance coverage, but against the employer's other assets. Scarberry's tort claim may have been worth a great deal more than $100,000, had he chosen to pursue his claim further against his employer.

*Univ. of Utah Hosp.,* 116 Idaho at 439, 776 P.2d at 448 (Bakes, C.J., concurring and dissenting).

**3.** We recognize that the County, upon payment of Scarberry's hospital charges, would have become subrogated to the Hospital's rights against Scarberry's employer and his employer's insurer. However, the Hospital's rights against those

settlement of his claims against his employer for $100,000, and the subsequent exemption of the settlement proceeds from execution, effectively prevented the County from becoming subrogated to Scarberry's rights against his employer, and also prevented the County from subsequently executing on the settlement proceeds.

The untimeliness of the Hospital's application for medical indigency benefits prejudiced the County's rights, having prevented the County from becoming subrogated to Scarberry's valuable rights against his employer before Scarberry negotiated those rights away. The fact that Scarberry settled for $100,000 on his claims against his employer, and the fact that the $100,000 was later determined to be exempt as being reasonably necessary for Scarberry's support, does not mean that, prior to the settlement, Scarberry and the County could not have each sued Scarberry's employer for the cost of Scarberry's hospitalization.

## CONCLUSION

We hold that the Board's determination that the Hospital's untimely application prejudiced the rights of the County was not clearly erroneous, arbitrary and capricious, or characterized by an abuse of discretion. Accordingly, we affirm the district court's decision upholding the Board's determination of prejudice and denial of medical indigency benefits.

No attorney fees are awarded; costs to respondents. I.A.R. 40 and 41.

WALTERS, C.J., and HERNDON, J. Pro Tem, concur.

parties were somewhat dubious in that the Hospital had either failed, or been unable, to perfect a hospital lien in Idaho on the proceeds of the settlement between Scarberry and his employer.