[No. 37038.     Department Two.     March 5, 1964.]

THE STATE OF WASHINGTON, *Respondent*, v. WALLACE R. RUTHERFORD, *Petitioner*.*

*Reported in 389 P. (2d) 895.

*Lawrence M. Ross* (of *Griffin, Boyle & Ross*), for petitioner.

*John G. McCutcheon, Eugene G. Olson,* and *Joseph D. Mladinov,* for respondent.

HAMILTON, J.—By writ of certiorari, petitioner, Wallace R. Rutherford, seeks review of an order denying his motion for a statement of facts and transcript at public expense in connection with his appeal of a criminal conviction. It is conceded that his appeal is nonfrivolous; hence, the sole issue presented upon this review is whether he qualifies as an indigent.

Petitioner, a promoter of various corporate enterprises, was charged with eight counts of violating the Securities Act of Washington (RCW 21.20). Pending trial, bail was set at $20,000, which he provided through personal sureties, supplemented at one stage by a $6,000 bond furnished by a compensated surety. Throughout all proceedings, including the present one, petitioner has been represented by privately retained counsel. Four thousand dollars has been paid to his counsel, $1,000 of which was expended in preparation for trial and $3,000 applied upon fees, with a balance due and owing upon fees in the amount of $1,666.45, secured

in part by portions of a gun collection once owned by him.

Trial upon the charges commenced on October 9, 1962, consumed approximately 23 trial days, and concluded on November 11, 1962, when the jury returned a verdict of guilty on four of eight counts. Motion for new trial was timely filed, denied, sentence imposed, and notice of appeal given. Bail was increased to $25,000 and furnished in the form of a property bond executed by two personal sureties. The cost of a statement of facts on appeal was estimated, and found by the trial court, to be between $4,000 and $5,000.

On January 2, 1963, petitioner filed a motion and affidavit, pursuant to RCW 2.32.240, seeking to be provided with court-appointed counsel and with a prepaid statement of facts and transcript to perfect his appeal. At the direction of the trial court, he thereafter supplemented his motion with an affidavit inventorying his physical assets. The state challenged his assertion of indigency and inability to pay the cost of perfecting his appeal. A series of hearings ensued, during the course of which he withdrew his request for court-appointed counsel. Based upon petitioner's affidavits and the evidence adduced at the hearings, it was his position that any physical assets remaining in his possession (including a 1961 Chrysler New Yorker automobile) were heavily encumbered, tied up in civil litigation, or of no value; that he was deeply in debt; and that he was living upon the charity of his friends. It was the state's position, in substance, that he had not made a good faith disclosure of all of his assets and that, in any event, he was capable of otherwise raising the necessary funds to perfect his appeal.

Parenthetically, it should be noted that concurrently with the prosecution of the charges in the instant case, petitioner was and is involved in some civil litigation, presumably arising out of his promotional activities, in which he is represented by privately retained counsel and a phase of which has already been reviewed by this court at his behest and expense. *Gloyd v. Rutherford,* 62 Wn. (2d) 59, 380 P. (2d) 867.

In passing upon relator's motion, the trial court in its oral decision, stated:

"The Defendant's assets, I think, are marginal and of doubtful present value. While it really doesn't effect my decision, I can't help but wonder how he can afford to drive a 1961 Chrysler, a far better car than I am able to drive, probably far better than anybody else in the court room owns and drives, and if he is nine months behind in payments and the company he deals with, with reference to the mortgage, is willing to accept his assurance that he will pay some day, there must be something on somebody's part, including the Defendant's, that he is going to be able to raise money some day and pay this up and reinstate this lien on that car.

"I think the Defendant and his associates stand to gain substantially if their hopes are realized, with reference to all of the transactions that were involved in this case. Actually, the costs of appeal are small, in the Court's opinion, compared with what has already been put into the Defendant's enterprises and apparently are still being put into these enterprises. It appears to the Court that sometime the Defendant may gain from the mining claims, he may gain in the value of his stock in Metallo Corporation.

"There are many ifs, connected with it, but based upon what he and his associates believe, they think the potential is great even at this date. It appears to the Court that the costs can be raised by the Defendant or those who are interested in him and I do not believe the Defendant's qualifications under the general rules are applicable for the free statement of facts, and the motion is denied."

Thereafter, the trial court entered extensive findings of fact, some predicated upon evidence adduced at the trial of the criminal charges, some upon judicial notice of proceedings in the civil litigation, and some upon evidence presented at the hearings upon petitioner's motion. From these findings, the trial court concluded he had not sustained his burden of qualifying as an indigent, and entered a formal order denying his motion.

Prefatory to a consideration of the merits of petitioner's contentions, we deem it advisable to set forth certain guiding principles.

(1) Indigent defendants, in keeping with constitutional guarantees, must be afforded as adequate appellate review as defendants who can afford to pay the costs of perfecting their appeals. Denial of a petition by an indigent criminal defendant for an adequate prepaid statement of facts to perfect a nonfrivolous appeal, constitutes a violation of the due process clause of the United States Constitution. *Griffin v. Illinois,* 351 U. S. 12, 100 L. Ed. 891, 76 S. Ct. 585, 55 A.L.R. (2d) 1055; *Eskridge v. Washington State Board of Prison Terms & Paroles,* 357 U. S. 214, 2 L. Ed (2d) 1269, 78 S. Ct. 1061; *Burns v. Ohio,* 360 U. S. 252, 3 L. Ed. (2d) 1209, 79 S. Ct. 1164; *Smith v. Bennett,* 365 U. S. 708, 6 L. Ed. (2d) 39, 81 S. Ct. 895; *Coppedge v. United States,* 369 U. S. 438, 8 L. Ed. (2d) 21, 82 S. Ct. 917; *Lane v. Brown,* 372 U. S. 477, 9 L. Ed. (2d) 892, 83 S. Ct. 768; *Draper v. Washington,* 372 U. S. 487, 9 L. Ed. (2d) 899, 83 S. Ct. 774; *Norvell v. Illinois,* 373 U. S. 420, 10 L. Ed. (2d) 456, 83 S. Ct. 1366; *Hardy v. United States,* 375 U. S. 277, 11 L. Ed. (2d) 331, 84 S. Ct. 424; *In re Woods v. Rhay,* 54 Wn. (2d) 36, 338 P. (2d) 332; *State v. Lewis,* 55 Wn. (2d) 665, 349 P. (2d) 438.

(2) Indigence is a relative term, and must be considered and measured in each case by reference to the need or service to be met or furnished. When related to the constitutional rights surrounding the furnishing of a prepaid statement of facts and transcript to a defendant in a nonfrivolous criminal appeal, the term does not and cannot, in keeping with the concept of equal justice to every man, mean absolute destitution or total insolvency. Rather, it connotes a state of impoverishment or lack of resources on the part of a defendant which, when realistically viewed in the light of everyday practicalities, substantially and effectually impairs or prevents his procurement of an adequate statement of facts and transcript necessary to a complete appellate review of his claims of error. *Adkins v. E. I. DuPont de Nemours & Co.,* 335 U. S. 331, 93 L. Ed. 43, 69 S. Ct. 85, 11 A.L.R. (2d) 599; *Hardy v. United States,* 375 U. S. 277, note 7 (concurrence per Goldberg, J.), 11 L. Ed. (2d) 331, 84 S. Ct. 424; Report of the Attorney Gen-

eral's Committee on Poverty and the Administration of Federal Criminal Justice (February 25, 1963), pp. 7, 8.

(3) In judicially passing upon a contested issue of a given defendant's ability to pay the costs of perfecting an appeal, consideration must, of necessity, revolve about and be given to the existence, nature, and extent of (a) the defendant's separate and community assets and liabilities; (b) the defendant's past and present occupation and earning capacity; (c) the defendant's credit standing; and (d) any other factors tending to substantially impair or materially enhance the defendant's ability to advance or secure the necessary costs. These factors must, in turn, be viewed and weighed in light of the fact that the defendant stands convicted of a crime, that due process of law entitles him to appellate review without undue delay, that ordinarily the transcription and delivery of a statement of facts is upon a "cash and carry" basis, and that friends of the defendant, however affluent, cannot be involuntarily obligated by him or compelled by the state to advance or secure such costs.

(4) By the terms of RCW 2.32.240,[1] the burden, at the outset, rests upon a defendant to demonstrate to the satisfaction of the court, by affidavit or otherwise, his inability to advance or secure the costs of procuring an adequate statement of facts. If the state would then successfully contest such a showing, it is incumbent upon it to come forward with substantial and factual evidence of such defendant's ability to pay, in whole or in part, the necessary costs. Mere innuendo, suspicion, or conjecture that a defendant may be able to secure or advance the costs is insufficient.

(5) If, following a contested hearing upon the issue of indigency, a defendant shall feel aggrieved by the trial

[1]" . . . That when the defendant in any criminal case shall present to the judge presiding satisfactory proof by affidavit or otherwise that he is unable to pay for such transcript, the judge presiding, if in his opinion justice will thereby be promoted, may order said transcript to be made by the official reporter, which transcript fee therefor shall be paid out of the county treasury as other expenses of the court are paid." RCW 2.32.240.

court's findings and order, he is entitled to appellate review thereof. *In re Woods v. Rhay, supra;* Rule on Appeal 57 (b) (5), 61 Wn. (2d) xv.

(6) Sound appellate procedure limits review of the trial court's findings and order to matters contained in the record brought before us.

(7) Great weight will be attached to the trial court's findings of fact upon the issue of indigency, yet, because a basic constitutional right relating to the fair and equal administration of criminal justice is involved, we cannot blindly accept such findings. We are compelled to make our own determination, upon the record before us, as to whether there has been a denial of due process of law. *Haynes v. Washington,* 373 U. S. 503, 10 L. Ed. (2d) 513, 83 S. Ct. 1336, and cases cited therein.

Against the backdrop of the foregoing observations, we turn to the instant case. Our examination and review of the record satisfies us, as it did the trial court, that petitioner has by his affidavits and evidence demonstrated that he personally has no ready, unencumbered physical assets of enough value to be converted into cash or security sufficient in amount to assure preparation in whole or in part of an adequate statement of facts without rendering him totally destitute. He has not, however, either by his affidavits or evidence, satisfactorily demonstrated that he has endeavored, without success, to obtain any part of the necessary costs upon the strength of his personal credit, business assets, or business enterprises. On the contrary, the evidence indicates that, presumably upon the strength of his credit and business finesse, business associates, creditors, and affluent friends have been willing to (a) post, and continue as security upon, a substantial bail bond; (b) subsidize his interim business activities, living facilities and expenses; (c) provide more than adequate transportation; (d) assure him continued legal representation in both civil and criminal litigation; and (e) underwrite the expense of his civil litigation and an appeal or appeals therein.

We are cognizant of the fact that voluntarily acting as a surety upon a property bond, deferring collection of an

outstanding obligation, or advancing occasional sums in the hope of protecting a business investment, differs vastly from voluntarily making a substantial cash advance to perfect the appeal of one who stands convicted and sentenced upon four violations of the Securities Act. It is understandable that, under such circumstances, business associates, creditors, and friends might well turn a deaf ear to entreaties for further assistance. On the other hand, it is conceivable, as pointed out by the trial court in his oral opinion, that the prospect of financial recoupment or gain coupled with faith in petitioner's business acumen and enterprises is, in the judgment of his friends and business associates, of such a nature as to impel advancing to him a part or all of the costs of the statement of facts. In any event, we do not deem it an undue burden upon petitioner to require that he demonstrate to the court a good faith effort upon his part to fully utilize his credit and business assets before turning to the public coffers.

Accordingly, the order of the trial court denying petitioner's motion upon the record as it now stands is affirmed. Petitioner, however, is granted permission to renew or reopen his motion for a prepaid statement of facts and transcript, within 30 days from the filing of the remittitur herein, for the purpose of demonstrating inability to obtain or borrow, in whole or in part, the costs of an adequate statement of facts. In such event, the trial court shall be entitled to review and consider such further evidence as intervening or current circumstances warrant.

The time for perfecting his appeal shall run from the expiration of the 30-day period or from the date of the trial court's order upon the renewed motion.

OTT, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.