712 P.2d 634

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Gary RANDLES, Defendant-Appellant.**

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Sue ERNST, Defendant-Appellant.**

**No. 99081.**

Supreme Court of Idaho.

Dec. 30, 1985.

expense.

Dan J. Rude, Coeur d'Alene, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., and Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

HUNTLEY, Justice.

## I. STATEMENT OF THE FACTS

Mr. Randles and Ms. Ernst were found guilty of possessing and manufacturing marijuana. At the sentencing hearing, appellants moved for a stay of execution of the judgment, pending appeal, and further, moved the court for an order allowing the costs of the reporter's transcript and the clerk's transcript on appeal to be paid by Boundary County. The court granted the motion for stay of execution pending appeal, but denied the motion for county payment of transcript costs. The sole issue to be resolved is whether the district court erred by denying the motion.

Appellants claimed that they were indigent and, that as a result of their indigency, they were entitled to a transcript on appeal to be furnished by the county. Appellants insist that the district court erred in determining that, for purposes of paying the cost of the transcripts, they were not indigent. Appellants state that the cost of the court reporter's transcript, excluding voir dire and oral argument, is $900. The cost of the clerk's transcript is $981, hence, the total request is for $1,801.

Appellants are married and have two children. Mr. Randles earned $8,547 in 1980, $9,367 in 1981, approximately $4,200 in 1982 and in 1983 he received approximately $5,200 from unemployment compensation. The financial statement which Mr. Randles filed in support of his motion reflected that as of March 5, 1984 he received no income from any source. The financial statement also indicates that Ms. Ernst had begun to receive $248 per month in public assistance beginning in March of 1984. The financial statement also shows that appellants' monthly expenses were $523.25, excluding $25 for monthly attorney's fees. Appellants insist that because, on the date of the filing of the financial statement, their monthly expenses exceeded their income by $275.25, they were clearly indigent and unable to personally afford the cost of the transcripts.

The financial statement also reflected that appellants are purchasing twenty acres, which property was valued by the county assessor's office at $10,600, a $9,600 debt existing against the property. They also owned two vehicles which were worth approximately $600 and miscellaneous household items worth approximately $500. They had no other assets.

In denying appellants' motion, the court stated:

> Well, based upon the financial statement as submitted and the shown ownership of the equities therein of land and the vehicle, I think the defendant is able to provide his own transcript ...
>
> . . . . .
>
> I am aware, as you mentioned, that there is a prior indebtedness against the land, but there is also a substantial equity.

## II. DISCUSSION

■ It is well-established that a state must furnish a transcript at no cost to an indigent defendant on appeal. *Griffin v. People of State of Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *Gardner v. State*, 91 Idaho 909, 435 P.2d 249 (1967).

I.C. § 19–851(c) provides:

"Needy person" means a person who at the time his need is determined is unable, to provide for the full payment of an attorney and all other necessary expenses of representation.

I.C. § 19–854 provides in part:

(b) In determining whether a person is a needy person and in determining the extent of his inability to pay, the court concerned may consider such factors as income, property owned, outstanding obligations, and the number and ages of his dependents. Release on bail does not necessarily prevent him from being a needy person. In each case, the person shall, subject to the penalties for perjury, certify in writing or by other record such material factors relating to his ability to pay as the court prescribes.

In the present case we are called upon to determine whether the district court improperly denied appellants' request for an appeal transcript to be furnished at county expense because of its finding that appellant was not indigent.

In *State v. Rutherford*, 389 P.2d 895 (Wash.1964) the court stated:

Indigence is a relative term, and must be considered and measured in each case by reference to the need or service to be met or furnished. When related to the constitutional rights surrounding the furnishing of a prepaid statement of facts and transcript to a defendant in a non-frivolous criminal appeal, the term does not and cannot, in keeping with the concept of equal justice to every man, mean absolute destitution or total insolvency. Rather, it connotes a state of impoverishment or lack of resources on the part of a defendant and which, when realistically viewed in the light of every day practicalities, substantially and effectively impairs or prevents his procurement of an adequate statement of facts and transcript necessary to a complete appellate review of his claims of error. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 69 S.Ct. 85, 93 L.Ed. 43; *Hardy v. United States*, 375 U.S. 277, Note 7 (concurrence per Goldberg, J.), 84 S.Ct. 424, 11 L.Ed.2d 331; Report of the Attorney General's Committee on Poverty and the Administration of Federal Criminal Justice (February 25, 1963), pp. 7, 8.

. . . .

In judicially passing upon a contested issue of a given defendant's ability to pay the costs of perfecting an appeal, consideration must, of necessity, revolve about and be given to the existence, nature, and extent of (a) the defendant's separate and community assets and liabilities; (b) the defendant's past and present occupation and earning capacity; (c) the defendant's credit standing; and (d) any other factors tending to substantially impair or materially enhance the defendant's ability to advance or secure the necessary costs. These factors must, in turn, be viewed and weighed in light of the fact that the defendant stands convicted of a crime, that due process of law entitles him to appellate review without undue delay, that ordinarily the transcription and delivery of a statement of facts is upon a "cash and carry" basis, and that friends of the defendant, however affluent, cannot be involuntarily obligated by him or compelled by the state to advance or secure such costs. At 389 P.2d 895 at 899.

The *Rutherford* court observed that the initial burden rests upon a defendant to demonstrate to the court's satisfaction his inability to advance or secure the costs to pay for the transcript. Once the defendant makes such a showing, the state must come forward with substantial factual evidence of the defendant's ability to pay in whole or in part, the necessary costs. The court stated, "Mere innuendo, suspicion, or conjecture that a defendant may be able to secure or advance the cost is insufficient." *Id.* at 899.

It has been said that, "While the determination of reasonableness is a matter within the discretion of the trial court, ... no single factor should alone be determinative. The court should take into consideration all the factors in the affidavit and, in addition, consider the designation of record—specifi-

cally, the degree to which the defendant has attempted to narrow the record to the issues to be presented on appeal." *Bruner v. State ex rel. Dist. Court,* Okl. Cty., 581 P.2d 1314 at 1316 (Okl.Cr.1978).

In the present case, the State contends that since appellants have not made a showing as to their need for the transcript of the preliminary hearing they have not attempted to narrow the record to issues to be presented on appeal. The cost of the preliminary hearing transcript comprises approximately half the total amount of costs requested by appellants. Moreover, at the time of the hearing on the motion, the state argued to the court that appellants' real estate was encumbered because it had been used to secure bonds for several other individuals charged with crime. Although for purposes of determining the reasonableness of a claim of indigency, a defendant should not be punished for his decision to make appeal bond, since in many cases a defendant will be able to maintain an income by being out on bond, *Bruner v. State, supra,* at 1316, no similar authority supports the contention that the district court may not disregard encumberances on property where, as here, such encumberances result from using the property to bond *others.*

■ We have reviewed the facts and circumstances of the present case in some detail. We are satisfied that, given the totality of the circumstances reflected by the record the district court did not abuse its discretion in denying the motion for county payment of transcript costs on appeal. The order of the district court is affirmed.

DONALDSON, C.J., and SHEPARD and BAKES, JJ., concur.

BISTLINE, Justice, dissenting.

The majority declines to give insight into its implicit holding that the appellants were not indigent. Rather, the majority merely assures the reader that it has "reviewed the facts and circumstances of the present case in some detail," and can find no abuse

of discretion on the part of the district court. Just what might amount to indigency in the eyes of the majority is difficult to imagine.

At the time of the filing of their financial statement, the appellants' expenses exceeded their income—received in the form of Sue Ernst's public assistance—by $275.25. Presumably the majority saw no potential there to defray the transcript expenses. More likely, the majority focused as did the district court on the equity value of the appellants' property. It is true enough that if the appellants were able to sell everything they owned at assessed value—a problematic feat at best—they could just cover the expenses. But the majority's own authority states that one need not be absolutely destitute or totally impoverished to qualify as indigent. *Ante,* p. 636.

The comprehensive assessment of the appellants' circumstances mandated by I.C. § 19–854 and by the case law cited by the majority ought to have resulted in a finding of indigency. For the appellants to pour all of their resources into covering the transcript expenses would leave them and their children without transportation or financial resources to cover their legal and living expenses, much less the $2,000 fine they face should their convictions be affirmed. The appellants may not be absolutely destitute now, but they certainly will be once subjected to the procedure advocated by the majority.

The meaning of "indigency" *qua* medical indigency recently has been addressed by this Court in *Idaho Falls Consolidated Hospitals, Inc. v. Board of Commissioners,* 109 Idaho 881, 712 P.2d 582 (Sup.Ct. 1985). There, a married couple in possession of two vehicles worth $300, some $2,109.62 in cash, and a homestead valued at $17,905 faced unpaid bills of $5,699.25, as well as future medical expenses. *Id.* at 583. There this Court found the property to be unavailable for purposes of the medical indigency statute, I.C. § 31–3502(1). *Id.* at 584. This Court held that the couple was medically indigent as a mat-

ter of law. *Id.* at 585. Perhaps that couple faced more difficult financial circumstances than the instant appellants. However, I cannot exclude the possibility of inconsistent answers to the same question, albeit a question asked in varying contexts.

I respectfully dissent.