153 P.3d 1202

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Douglas Senn CALLAGHAN, Defendant–Appellant.**

No. 31493.

Court of Appeals of Idaho.

June 22, 2006.

Review Denied March 13, 2007.

Craig Charles Kosonen, Osburn, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent. Rebekah A. Cudé argued.

GUTIERREZ, Judge.

Douglas Senn Callaghan appeals from his judgment of conviction and sentence for offering a false or forged instrument for record in violation of Idaho Code § 18–3203. Callaghan's primary contention is that the district court erred in denying his motion to dismiss. He also contends that the district court erred in denying his motion for payment of fees. For the reasons set forth below, we vacate Callaghan's judgment of conviction and reverse the order denying Callaghan's motion for payment of fees and remand.

## I.

## BACKGROUND

On February 16, 2004, Callaghan was given both a warning for operating a 1979 BMW sedan with malfunctioning rear turn signals and a citation for failure to show proof of insurance. Callaghan had acquired the BMW two days earlier and planned to give it to his son. Callaghan possessed an automobile insurance policy for his other car, which provided that an "insured car" includes "[a]ny additional car of which you acquire ownership during the policy period . . . you must, however, notify us within 14 days of its acquisition."

Callaghan took the certificate of insurance for his other vehicle to the Kootenai County Courthouse and presented it to a deputy clerk because Callaghan believed that the automatic temporary liability coverage provision gave him coverage on the BMW at the time he was cited for failure to show proof of insurance. However, Callaghan's proof of insurance certificate was rejected by the clerk's office for not referencing the newly acquired BMW. In response, and after the fourteen-day coverage provision had expired, Callaghan used his own computer to produce

an insurance card for the 1979 BMW using the policy number for his valid insurance policy. He presented this identification card to the clerk's office, and Callaghan's proof of insurance violation charge was thereupon dismissed.

After Callaghan gave the vehicle to his son, Callaghan's ex-wife contacted a fraud investigator at the Idaho Department of Insurance and requested an investigation. Subsequently, Callaghan was charged with and convicted of a felony violation of I.C. § 18–3203, sentenced to two years of imprisonment, with one year determinate, and was fined $3,000. On appeal, Callaghan presents several issues, the following of which are dispositive of this appeal:

1. Did the prosecutor have discretion to charge Callaghan under I.C. § 18–3203 instead of under a more recent and specific statute, I.C. § 49–1430?

2. Did the district court abuse its discretion in finding that the defendant was not indigent and, therefore, not entitled to the preparation of the record and transcript on appeal at state expense?

3. Does this Court have authority to grant Callaghan's request for costs and attorney fees on appeal?

## II.

## ANALYSIS

### A. The Specific and More Recent Statute, I.C. § 49–1430, Prevails Over I.C. § 18–3203

The state asserts that the prosecutor was vested with discretion to charge Callaghan under either I.C. § 18–3203,[1] which makes it a felony to offer a false or forged instrument for filing or recording, or I.C. § 49–1430,[2]

which makes it a misdemeanor to forge a certificate of automobile insurance. Callaghan claims that the state was precluded from prosecuting him under I.C. § 18–3203 because I.C. § 49–1430 specifically relates to the situation at hand.

■■■ We exercise free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct.App.2003). Separate statutes dealing with the same subject matter should be construed harmoniously, if at all possible, so as to further the legislative intent. *State v. Maland*, 124 Idaho 537, 540, 861 P.2d 107, 110 (Ct.App.1993). Where a harmonious construction is impossible, the more specific of the two statutes will prevail. *State v. Roderick*, 85 Idaho 80, 84, 375 P.2d 1005, 1007 (1962); *Maland*, 124 Idaho at 540, 861 P.2d at 110; *see also State v. Wilson*, 107 Idaho 506, 508 690 P.2d 1338, 1340 (1984).

Because I.C. § 49–1430 is within a comprehensive statutory scheme specifically dealing with the subject matter of Callaghan's situation, we conclude that the district court erred in denying Callaghan's motion to dismiss. Idaho's financial responsibility laws concerning liability insurance coverage for automobiles are set forth primarily in Title 49, chapters 12 and 14 of the Idaho Code. Section 49–1229 requires that vehicles registered and operated in Idaho be covered by liability insurance. Section 49–1231 requires that insurance companies issue certificates of liability insurance to their insureds in a form prescribed by the Department of Insurance, and section 49–1232(1) requires that the certificate or proof of liability insurance be in the possession of every motor vehicle operator or present in the vehicle whenever a vehicle is operated within this state. That same subsection also specifies that a person may not be convicted for violating the proof of insurance requirement if that person pro-

1. Idaho Code Section 18–3203 states: "Every person who knowingly procures or offers any false or forged instrument to be filed, registered or recorded in any public office within this state, which instrument, if genuine, might be filed, or registered, or recorded under any law of this state, or of the United States, is guilty of a felony."

2. Idaho Code Section 49–1430 provides: "Any person who shall forge or, without authority,

sign any declaration that a policy or bond is in effect, or any evidence of proof of financial responsibility, or who files or offers for filing any evidence of proof knowing or having reason to believe it is forged or signed without authority, shall be deemed guilty of a misdemeanor and fined not more than one thousand dollars ($1,000) or imprisoned not more than one (1) year, or both."

duces a certificate or proof of liability insurance at any time prior to conviction. Next, section 49–1428 makes it an infraction (for first offense) or a misdemeanor (for subsequent offenses) for a person to operate a vehicle in this state without a valid policy of liability insurance. The immediately following statute, I.C. § 49–1429, makes it unlawful to alter, falsify, forge, counterfeit, issue, or make any certificate of liability insurance except as authorized in Title 49. It is within this context that section 49–1430 was adopted, making it a misdemeanor for an individual to forge any notice or proof of financial responsibility or to offer such for filing.

■ Idaho Code § 18–3203 was enacted in 1887, prior to the advent of automobiles and the attendant need for automobile insurance. Idaho Code Section 49–1430, on the other hand, was enacted in 1947 and is within a comprehensive statutory scheme governing motor vehicle liability insurance and related concerns. Given its particular subject matter and specificity, the more recently enacted statute, I.C. § 49–1430, prevails. By adopting I.C. § 49–1430, the legislature made clear its intent that forgery of a certificate of insurance would be punished as a misdemeanor, not as a felony under section 18–3203.[3] Therefore, Idaho Code § 18–3203 does not represent an alternative enforcement mechanism for an act that is punishable under I.C. § 49–1430.[4] The legislature left no room for prosecutorial discretion in this instance. Accordingly, the district court erred in denying Callaghan's motion to dismiss.

## B. The District Court Abused its Discretion in Finding that Callaghan was Not Indigent

Callaghan argues that the district court abused its discretion by finding Callaghan

not indigent and, therefore, not entitled to the preparation of a transcript and clerk's record for this appeal at state expense. Apparently, Callaghan had been represented by the public defender's office in other recent matters. And, in the present matter, his current counsel is providing legal services free of charge.

■ Because "there can be no equal justice where the kind of trial a man gets depends on the amount of money he has," it is the duty of the state to provide an adequate report of trial proceedings at no cost to an indigent defendant on appeal. *Mayer v. Chicago,* 404 U.S. 189, 193–94, 92 S.Ct. 410, 414–15, 30 L.Ed.2d 372, 377–78 (1971) (quoting *Griffin v. Illinois,* 351 U.S. 12, 19, 76 S.Ct. 585, 591, 100 L.Ed. 891, 899 (1956)); *State v. Randles,* 109 Idaho 933, 934, 712 P.2d 634, 635 (1985). Indigence is a relative term, however, and must be evaluated in each case according to the scope of the service to be furnished or the need to be met. *Randles,* 109 Idaho at 935, 712 P.2d at 636. Callaghan asserts that his alleged insolvency made him unable to personally pay the $1,056 reporter's transcript and the $329.75 clerk's record. We therefore evaluate Callaghan's claim of indigency relative to the scope of the $1,385.75 total need to be met.

In determining whether a person is a needy person and in determining the extent of his inability to pay, Idaho Code § 19–854(b) permits that "the court concerned may consider such factors as income, property owned, outstanding obligations, and the number and ages of his dependents." In *Randles,* our Supreme Court instructed that when the defendant's ability to perfect an appeal is at issue, courts must necessarily consider:

---

3. Callaghan argues that I.C. § 18–3203 is restricted in application to instruments affecting the title to real property. We need not decide whether I.C. § 18–3203 covers the same subject matter as I.C. 49–1430, as the state contends. It suffices to say that the preemption rule we employ herein is effective where a violation of a specific statute will necessarily result in a violation of a general statute.

4. We further note that the parties have offered no law, other than Title 49, that could be construed in this case as fulfilling the "under any law" requirement of I.C. § 18–3203 by providing for the filing of proof of financial responsibility. Without any such law outside the bounds of Title 49, we are directed by I.C. § 18–3203's "under any law" requirement back to I.C. § 49–1430, which specifically mandates that a defendant in Callaghan's situation "shall be deemed guilty of a misdemeanor," not a felony.

(a) the defendant's separate and community assets and liabilities; (b) the defendant's past and present occupation and earning capacity; (c) the defendant's credit standing; and (d) any other factors tending to substantially impair or materially enhance the defendant's *ability to advance or secure* the necessary costs. These factors must, in turn, be viewed and weighed in light of the fact that the defendant stands convicted of a crime, that due process entitles him to appellate review without undue delay, that ordinarily the transcription and delivery of a statement of facts is upon a "cash and carry" basis, and that *friends of the defendant, however affluent, cannot be involuntarily obligated by him or compelled by the state to advance or secure such costs.*

*Randles,* 109 Idaho at 935, 712 P.2d at 636 (emphasis added). No single factor by itself is determinative. *Id.*

■ It is the defendant's burden "to demonstrate to the court's satisfaction his inability to advance or secure the costs to pay for the transcript." *Id.* Once the defendant makes a *prima facie* showing of indigency, the burden shifts to the state to present "substantial factual evidence of the defendant's ability to pay in whole or in part, the necessary costs.... Mere innuendo, suspicion, or conjecture that a defendant may be able to secure or advance the cost is insufficient." *Id.*

The presentence investigation and Callaghan's own affidavit establish his monthly earning capacity at between $2,000 and $2,400. Sometime after the events leading to the charge in this case, Callaghan moved to Florida. He had been employed in Florida and resided there until he returned to Idaho to attend to his criminal case. Although Callaghan was presently unemployed, in his past employment as a carpenter his wages had ranged from $15 to $21.65 per hour. Callaghan's monthly expenses totaled approximately $2,000 in rent, utilities, food, gas, auto insurance, child support, probation fees and fines. Callaghan's counsel told the district court, "I'm confident he's able to get work, but as far as paying the fees up front which the appellate process requires, he's not

able to do that." Callaghan added, "My credit rating is terrible and I cannot obtain a loan from conventional sources. My parents, extended family, and friends have helped me make it thus far financially, but those resources are running out." Callaghan's assets totaled approximately $6,000 in tools, furniture and a 1992 pickup. Total liabilities listed for child support, court fines, IRS, and Idaho state tax were in excess of $300,000. Callaghan admitted the sums owed to the IRS and State Tax Commission were overstated.

The district court calculated Callaghan's ability to pay the $1,385.75 appellate preparation fees by taking the low end of Callaghan's expected earning capacity, $13 per hour, and multiplying it by forty hours per week and 4.3 weeks per month for a total of $2,236 before deduction of taxes. After considering Callaghan's significant liabilities and minimal assets, the court determined Callaghan not to be indigent. Callaghan's counsel sought clarification, asking, "Do you find that he has the ability to pay these fees now?" To which the court responded,

> He has the ability to pay those [appellate] fees now. You indicated the support of the family, and I realize fully that support of the family can't be considered in his income, but it is a resource that he would have for fronting the money in order to repay them. I think the in excess of $200 a month would be enough to deal certainly with the clerk's record immediately, the transcript in very short order....

■ Callaghan claims that the mere possibility of support from his family was not a proper basis upon which the court denied his motion to have the public bear the expense of the fees on appeal. We agree. The record is devoid of any information which would identify what, if any, resources might have been available from Callaghan's family members. Therefore, we conclude the district court abused its discretion by ordering immediate payment on the basis of bare innuendo or speculation that Callaghan may have been able to borrow from relatives to pay the costs of an appeal. *See* I.C. § 19–852(a), –854(b); *Randles,* 109 Idaho at 935, 712 P.2d at 636.

Whether a remedy for this error is appropriate at this time is problematical. We note that Callaghan did not appeal directly from the denial order (which would have delayed his appeal on the merits). Instead, he acquired the funds in some way to pay the costs for this appeal. This could indicate, of course, that Callaghan was never really indigent in the first place, or it could be that he incurred an indebtedness that he should not have been required to incur in order to exercise his right to appeal. Further, even if the county had been ordered to pay the appeal costs on Callaghan's motion, the county would be entitled to obtain reimbursement from Callaghan in a civil action if Callaghan *now* has the resources to pay. *See* I.C. § 19–858(b). Therefore, without further information, it would be inappropriate for this Court to order reimbursement to Callaghan. Consequently, we remand to the district court to determine what remedy, if any, should now be afforded Callaghan as a result of the erroneous denial of his motion for payment of his costs of appeal at county expense.

## C. Callaghan is Not Entitled to Costs and Attorney Fees on Appeal

Callaghan concedes there is no statute expressly authorizing the taxation of costs and attorney fees against the state or county in a criminal prosecution or appeal. Nevertheless, Callaghan argues that an award against the county is necessary to deter oppressive and overzealous prosecution, "for as long as probable cause has been found, no basis for an action for malicious prosecution exists."

Idaho courts have "consistently held that '[c]osts are allowed against the state only where provided by statute or by neces-sary implication.'" *State v. Thompson,* 119 Idaho 67, 70, 803 P.2d 973, 976 (1990) (quoting *Chastain's Inc. v. State Tax Comm'n,* 72 Idaho 344, 350, 241 P.2d 167, 170 (1952)). In criminal cases, costs and attorney fees have been denied for lack of statutory authority allowing for such an award. *See State v. Rae,* 139 Idaho 650, 656–57, 84 P.3d 586, 592–93 (Ct.App.2004); *State v. Roll,* 118 Idaho 936, 940, 801 P.2d 1287, 1291 (Ct.App.1990); *State v. Spurr,* 114 Idaho 277, 280, 755 P.2d 1315, 1318 (Ct.App.1988); *State v. Peterson,* 113 Idaho 554, 556, 746 P.2d 1013, 1015 (Ct.App.1987). Callaghan's argument is therefore better presented to the legislature. The courts presently have no authority to award costs and attorney fees in criminal cases on appeal.

## III.

## CONCLUSION

The district court erred in denying Callaghan's motion to dismiss and the court abused its discretion in finding that Callaghan was not indigent. The judgment of conviction is vacated and the order denying Callaghan's motion for payment of fees at county expense is reversed and the case is remanded for further proceedings. Costs and attorney fees are denied as this appeal involves a criminal case.

Chief Judge PERRY and Judge LANSING concur.