**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36797**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | )     **2010 Opinion No. 82** |
|     **Plaintiff-Appellant,** | ) |
| | )     **Filed: December 10, 2010** |
| v. | ) |
| | )     **Stephen W. Kenyon, Clerk** |
| IRVIN C. RAY, | ) |
| | ) |
|     **Defendant-Respondent.** | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Steven C. Verby, District Judge.

Order of the district court granting suppression of evidence, <u>affirmed</u>.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for appellant. Lori A. Fleming argued.

Valerie P. Thornton, Sandpoint, for respondent.

_____

MELANSON, Judge

The state appeals from the district court's order suppressing evidence arising from an allegedly unlawful detention of a vehicle in which Irvin C. Ray was a passenger. For the reasons set forth below, we affirm.

## I.

## BACKGROUND

On March 17, 2009, a state police officer was traveling west on a two-lane highway when he passed a silver Subaru wagon with only one headlight[1] traveling toward him in the eastbound lane. The Subaru was immediately followed by a pickup, in which Ray was a passenger. To effectuate a traffic stop of the Subaru, the officer made a U-turn and began pursuit. The officer followed the cars a short distance before activating his overhead lights just before a turnout. At

_____

[1] The officer later stated what caught his attention was that the car did not have a front license plate.

1

this point the officer was directly behind Ray's pickup. Both vehicles pulled over into the turnout and the officer maneuvered his car between them--that is, directly behind the lead vehicle and approximately three to five car lengths in front of Ray's pickup. While passing Ray's pickup, the officer radioed dispatch and called out the license plate number of only the Subaru as his intent was to stop just that vehicle. Within seconds of passing Ray's pickup, the officer stepped from the patrol vehicle, which still had its lights on, and proceeded toward the pickup. The officer testified that he walked back to the pickup because, even though the officer had pulled in behind the lead vehicle, the pickup remained parked behind the officer's car. Therefore, for safety purposes, the officer felt the need to convey his intent to stop only the lead car and to ask the pickup's driver to continue on. It took the officer approximately sixteen seconds to walk back to the pickup, from the time he unlatched his patrol car door until the time he said "Hello" to Ray.

Upon reaching the pickup, however, the officer smelled a strong odor of unburnt marijuana coming from the open driver's side window and noticed that neither the driver nor Ray was wearing a seatbelt. The officer greeted the occupants, told them that he had only intended to stop the Subaru, began questioning them about the seatbelt violations, and examined their identifications. Ultimately, based on the smell of marijuana, the officer searched the occupants and the pickup. The officer found a marijuana pipe, rolling papers, and a small baggie of marijuana in Ray's pockets and 8.2 ounces of marijuana in a backpack in the pickup. Ray was charged in two separate cases with misdemeanor possession of drug paraphernalia, I.C. § 37-2734A(1), and felony possession of marijuana, I.C. § 37-2732(e).

Ray moved to suppress the evidence against him in both cases, arguing that it was the fruit of an unlawful detention. After an evidentiary hearing, the district court granted Ray's suppression motion. The court held that, by activating his overhead lights, the officer had commanded Ray, pursuant to I.C. §§ 49-625 and 49-1404, to pull over and therefore detained Ray.[2] Thereafter, although the officer passed Ray, the act of walking back to the pickup

---

[2] Ray conceded at oral argument that, although he was "detained" in the sense that he was required to pull over and stop until passed, he was not "seized" for Fourth Amendment purposes at that time. The relevant inquiry, therefore, is whether the officer walking toward Ray's pickup was a show of authority such that a reasonable person would not feel free to leave, thereby constituting a Fourth Amendment seizure.

2

continued the seizure because a reasonable person would not feel free to leave at that point. Because the officer had no probable cause to stop Ray, the court reasoned, the officer's actions constituted an unlawful detention mandating the suppression of the resulting collection of evidence.

The state appeals the district court's suppression order in the misdemeanor case.[3] The state argues that a driver, who yields to a police vehicle with activated overhead lights and chooses not to continue on after the police vehicle has passed, is not seized for purposes of the Fourth Amendment. Further, the state argues that the driver is not seized when, after choosing not to continue on, he is approached by the officer who had originally passed him. Alternatively, the state argues that, even if Ray was seized, suppression was not required because the detention was reasonable. Ray argues that he was seized, suppression is required, and he should be awarded attorney fees on appeal.

## II.

## DISCUSSION

The state argues the district court erred in granting Ray's suppression motion because there was no seizure or, alternatively, because any seizure was reasonable. The standard of review of a suppression motion is bifurcated. *State v. Willoughby*, 147 Idaho 482, 485, 211 P.3d 91, 94 (2009). When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *Willoughby*, 147 Idaho at 485-86, 211 P.3d at 94-95; *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## A.     Fourth Amendment Seizure

The state argues that Ray was not seized when the driver of the pickup, in which he was a passenger, did not continue on after the officer had passed the pickup and parked behind another

---

[3]     At the conclusion of the suppression hearing, the defense moved to dismiss and the motion was granted explicitly as to CR 2009-1518, the felony case, and CR 2009-1516, the misdemeanor case. The state, unaware that there were two cases, only appeals the suppression order in the misdemeanor case.

3

vehicle, nor when the officer approached the pickup to ask its occupants to move on because any restriction on Ray's freedom of movement was incidental to the stop of the intended vehicle and not the result of intentional police conduct.

The Fourth Amendment to the United States Constitution and Article I, § 17 of the Idaho Constitution prohibit unreasonable searches and seizures. A seizure that is subject to constitutional scrutiny occurs when an officer, by physical force or a show of authority, has restrained the liberty of a citizen. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); *Willoughby*, 147 Idaho at 486, 211 P.3d at 95; *State v. Nickel*, 134 Idaho 610, 612, 7 P.3d 219, 221 (2000). A show of authority will constitute a seizure only if, considering the totality of the circumstances, a reasonable person would not have felt free to leave or otherwise decline the officer's requests and terminate the encounter. *Brendlin v. California*, 551 U.S. 249, 255 (2007); *State v. Reese*, 132 Idaho 652, 653, 978 P.2d 212, 213 (1999); *State v. Roark*, 140 Idaho 868, 870, 103 P.3d 481, 483 (Ct. App. 2004). If a reasonable person would feel free to disregard the law enforcement officer, then the encounter is consensual and not a seizure. *Willoughby*, 147 Idaho at 486, 211 P.3d at 95; *State v. Page*, 140 Idaho 841, 843-44, 103 P.3d 454, 456-57 (2004). However, that a reasonable person would not have felt free to leave, though *necessary* to a finding of a seizure, is not always *sufficient* to show that a seizure has occurred. *California v. Hodari D.*, 499 U.S 621, 628 (1991). *See also State v. Agundis*, 127 Idaho 587, 592, 903 P.2d 752, 757 (Ct. App. 1995) (interpreting the Idaho Constitution). A court will determine if a person was seized by objectively evaluating the totality of the circumstances. *Willoughby*, 147 Idaho at 486, 211 P.3d at 95; *State v. Henage*, 143 Idaho 655, 658, 152 P.3d 16, 19 (2007). Thus, an officer's intent matters only insofar as it has been objectively conveyed to the person at issue. *Brendlin*, 551 U.S. at 260-61. The defendant bears the burden of proving that a seizure occurred. *Willoughby*, 147 Idaho at 486, 211 P.3d at 95; *Page*, 140 Idaho at 843, 103 P.3d at 456.

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979); *Roark*, 140 Idaho at 870, 103 P.3d at 483. A defendant is subjected to a *de facto* detention when stopped pursuant to a police officer's display of overhead lights if the stop is accomplished pursuant to the terms of Idaho Code § 49-625(1). *State v. Mireles*, 133 Idaho 690, 692, 991 P.2d 878, 880 (Ct. App. 1999). *See also Willoughby*, 147 Idaho at 487, 211 P.3d at 96 (holding that *Mireles* did not require a finding of *de facto* detention

4

because I.C. § 49-625(1), by its terms, did not apply to the case as the vehicle in question was stationary before the lights were turned on and was not located on a highway). Idaho Code Section 49-625(1) states:

> Upon the immediate approach of an authorized emergency or police vehicle making use of an audible or visible signal, meeting the requirement of section 49-623, Idaho Code, the driver of every other vehicle shall yield the right-of-way and immediately drive to a position parallel to, and as close as possible to, the nearest edge or curb of the highway lawful for parking and clear of any intersection, and stop and remain in that position until the authorized emergency or police vehicle has passed, except when otherwise directed by a peace officer.

Thus, pursuant to that section a person is no longer required to remain stopped, and is not seized, once the officer's vehicle has passed *unless the officer indicates otherwise*.[4]

In this case, the initial submission by the driver of the vehicle in which Ray was a passenger to the officer's overhead lights--pulling over to the side of the road and stopping--did not constitute a brief seizure under *Mireles*. The officer's act of then getting out of his patrol car and walking back toward the pickup within seconds invoked the "except when otherwise

---

[4]    The Ninth Circuit has relied on United States Supreme Court precedent when discussing officer intent in determining that a driver, who pulls over pursuant to an officer's flashing lights but who is passed, is not seized for Fourth Amendment purposes. *United States v. Nasser*, 555 F.3d 722 (9th Cir. 2009). *Nasser* is not persuasive. The court in *Nasser* stated:

> [S]uppose a police car approaches a driver's car from behind, with siren blaring and lights flashing. The driver, in accord with his reasonable belief that he is being stopped, pulls onto the shoulder and stops. But the policeman is chasing somebody else, who was ahead of the driver who pulled over and the police car continues down the road. It cannot reasonably be argued that the driver who pulled over was "stopped" within the meaning of the Fourth Amendment, and that accordingly reasonable suspicion was required for the stop. The policeman has not violated the driver's constitutional rights even though a reasonable driver would think he was being stopped. That is because the policeman did not intend to stop him, even though a reasonable driver in his position would think that he was being stopped.

*Nasser*, 555 F.3d at 731. Idaho case law does not indicate that a person is seized who merely yields the right-of-way to a police vehicle that continues down the road. Rather, a person is seized when he or she is actually stopped. *See Willoughby,* 147 Idaho at 485, 211 P.3d at 96; *Mireles,* 133 Idaho at 692, 991 P.2d at 880. This encompasses two situations pursuant to the statute's terms: (1) when the police officer never passes the person because the officer effectuates a traffic stop of that person, and (2) when the officer passes the person but "otherwise directs" that the person is to remain stopped. *Willoughby* and *Mireles* demonstrate that the officer's initial intent is not determinative of whether a seizure occurs.

5

directed" language of I.C. § 49-625(1). This is a significant part of the totality of the circumstances. The officer had been directly behind the pickup when he activated his overhead lights, all three cars stopped in close proximity in a small turnout with the police car in the middle, and the officer proceeded to get out of his car, with the overhead lights still flashing, and walk toward the pickup within seconds of maneuvering around it. Under the totality of these unusual circumstances, a reasonable person would not feel that they were free to leave.

In this limited instance where the stop is so close in time to the officer walking toward the vehicle, the officer's approach would convey to any reasonable person that he or she was not free to leave, implicating the "unless otherwise directed" language of I.C. § 49-625(1). Therefore, a seizure occurred when Ray and the driver of the pickup remained at the scene as the officer approached, essentially submitting to the officer's "show of authority." *See Willoughby*, 147 Idaho at 482, 211 P.3d at 91.

## B.     Reasonableness of Detention

The state argues that the seizure, specifically the act of walking back toward Ray's pickup, was reasonable because the degree to which it intruded upon Ray's privacy was minimal and the promotion of the legitimate governmental interest of officer safety was great. In making this argument the state argues that this Court should overrule the rejection of the good faith exception in Idaho by *State v. Guzman*, 122 Idaho 981, 842 P.2d 660 (1992), which this Court must decline to do for lack of authority. In the alternative, the state asks this Court to limit *Guzman*'s rejection of the good faith exception to the exclusionary rule.

We need not address the state's arguments concerning the reasonableness of the detention because the state failed to raise these arguments below. *See State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Even if we were to address the reasonableness of the seizure, the state's argument fails on its merits. Because a traffic stop is limited in scope and duration, it is analogous to an investigative detention and is analyzed under the principles set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). The Court must first ask whether the detention itself was lawful, and therefore reasonable, before addressing whether the scope and nature of the detention was reasonable. The correct standard for this inquiry, contrary to the state's contention, is whether the detention is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *Id.* Because the officer admits that he did not

possess reasonable suspicion based on specific articulable facts that Ray was, had been, or was about to be engaged in criminal activity, any seizure of Ray would have been unreasonable.

## C. Attorney Fees

Ray argues that he should be granted attorney fees on appeal. This Court has long held that it has no authority to award costs or attorney fees on appeal in criminal cases. *State v. Callaghan*, 143 Idaho 856, 861, 153 P.3d 1202, 1207 (Ct. App. 2006); *State v. Roll*, 118 Idaho 936, 940, 801 P.2d 1287, 1291 (Ct. App. 1990). Therefore, Ray is not entitled to attorney fees.

## III.

## CONCLUSION

We hold that Ray was seized for Fourth Amendment purposes and that such seizure was unreasonable. Further, Ray is not entitled to attorney fees on appeal. Therefore, we affirm the district court's suppression order.

Judge GUTIERREZ, **CONCURS.**

Judge Pro Tem SCHWARTZMAN, **DISSENTING**

I respectfully dissent. In a nutshell, since Ray was not "seized" for Fourth Amendment purposes at the time the truck he was riding in pulled over pursuant to Idaho Code § 49-625(1), neither was he "seized" incident thereto for the few extra seconds it took the officer to walk back and verbally advise the occupants that they were free to leave.

The issue in this case can be best framed as the Ninth Circuit did in *United States v. Nasser*, 555 F.3d 722, 725 (9th Cir. 2009), when it stated:

> What if the police do not intend to stop someone, but a person thinks that he is being stopped? Must that unintended stop still be supported by reasonable suspicion in order to prevent suppression of its fruits? Does the "objective" examination of police conduct, as required in *Whren v. United States*, [517 U.S. 806 (1996)] for a vehicle stop brought about by police action undertaken to effect the stop, mean that if a reasonable person would think that he was being stopped, then the person is "seized" within the meaning of the Fourth Amendment, even if the police do not want the person to stop and intended for him to go on about his business without stopping?

As concluded in *Nasser*, the answer is no. It is more consistent with United States Supreme Court precedent to interpret I.C. § 49-625(1) to mean that only those cars that are intentionally and individually pursued by police vehicles and stopped through the use of

overhead lights are seized, not all cars that pull over and stop incident to a police officer's movements through traffic.

A Fourth Amendment seizure:

> does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*.

*Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989). A violation of the Fourth Amendment requires "an *intentional* acquisition of physical control." This is so because, "the Fourth Amendment addresses the 'misuse of power' . . . not the *accidental* effects of otherwise lawful government conduct." *Id*. at 596 (emphasis added). That intent must be objectively conveyed to the person allegedly subjected to a seizure. *Brendlin v. California*, 551 U.S. 249, 260-61 (2007). When the United States Supreme Court, in *Brendlin*, clarified that passengers in a car are seized for purposes of the Fourth Amendment, it stated that the California Supreme Court's fear that such a rule would extend to motorists who are forced to slow down or stop their movement in order to accommodate another vehicle's submission to police authority was not warranted because:

> an occupant of a car who knows that he is stuck in traffic because another car has been pulled over (like the motorist who can't even make out why the road is suddenly clogged) would not perceive a show of authority *as directed at him or his car*. Such *incidental restrictions* on freedom of movement would not tend to affect an individual's "sense of security and privacy in traveling in an automobile." Nor would the consequential blockage call for a precautionary rule to avoid the kind of "arbitrary and oppressive interference by [law] enforcement officials with the privacy and personal security of individuals" that the Fourth Amendment was intended to limit.

*Brendlin*, 551 U.S. at 262 (citations omitted) (emphasis added). The Ninth Circuit relied on this Supreme Court precedent discussing officer intent in determining that a driver who pulls over pursuant to an officer's flashing lights but who is passed is not seized for Fourth Amendment purposes. *Nasser*, 555 F.3d at 727-31. The court stated:

> [S]uppose a police car approaches a driver's car from behind, with siren blaring and lights flashing. The driver, in accord with his reasonable belief that he is being stopped, pulls onto the shoulder and stops. But the policeman is chasing somebody else, who was ahead of the driver who pulled over and the

> police car continues down the road. It cannot reasonably be argued that the driver who pulled over was "stopped" within the meaning of the Fourth Amendment, and that accordingly reasonable suspicion was required for the stop. The policeman has not violated the driver's constitutional rights even though a reasonable driver would think he was being stopped. *That is because the policeman did not intend to stop him, even though a reasonable driver in his position would think that he was being stopped.*

*Nasser*, 555 F.3d at 731 (emphasis added).

The constitutional thrust of this approach is exemplified by the facts herein where a blanket rule--that all vehicles pulling over pursuant to I.C. § 49-625(1)'s directive are "seized" for purposes of the Fourth Amendment--would require suppression of evidence where the officer clearly did not intend to stop Ray's truck and never overtly indicated to Ray that he was not free to leave. The officer radioed in only the Subaru's license plate, passed Ray's truck, and pulled in as close as possible to the Subaru. At this point, the *sine qua non* for a Fourth Amendment seizure was missing because the means that led the driver to stop--the flashing overhead police lights--were not means intentionally applied to bring about the stop of Ray's vehicle. *Nasser*, 555 F.3d at 730.

A person is seized when he is "meant to be stopped by [a particular law enforcement action] and is so stopped." That is, a seizure occurs where a person is stopped by "the very instrumentality set in motion or put in place in order to achieve that result." *Id.* at 731 (citing to *Brendlin* and *Brower*). Any detention of the truck was *incidental* to the stop of the Subaru and thus was the kind of "incidental restriction on the freedom of movement" noted in *Brendlin* as not constituting a seizure. Such inadvertent stops--as opposed to an intentional application of government authority--does not implicate the Fourth Amendment when one remembers its purpose is to curb misuse of power not "accidental effects of otherwise lawful government conduct." With no seizure as a starting point, the officer merely walking back as a point of civility, in order to clarify the situation, is constitutionally benign and neutral. In this situation, there is no legal difference between waiving the vehicle on and walking back to ask the vehicle to move on.

The constitution is not offended by the few extra seconds Ray had to wait for the officer to walk from his patrol vehicle back to the truck. After all, this is not a case where a seizure is impermissibly prolonged for evidentiary "fishing expeditions" unrelated to the purposes of the original contact. *See*, *e.g.*, *State v. Aguirre*, 141 Idaho 560, 563, 112 P.3d 848, 851 (Ct. App.

9

2005); *State v. Gutierrez*, 137 Idaho 647, 651-53, 51 P.3d 461, 465-67 (Ct. App. 2002). The officer testified that he had no intent to investigate the occupants of the truck at all until he smelled marijuana from the open driver-side window. Under these circumstances there is no constitutional requirement that an officer motion for a person to leave by hand signal and flashlight in order to avoid the strictures of an unlawful seizure. Our constitutional fabric is not so gossamer thin as to be implicated and offended by a sixteen-second delay undertaken in the name of reasonable civility as opposed to what alternatively would amount to a ten to twelve-second delay in the name of legal nicety.

I end where I began. In a nutshell, this four-to-six-second time differential doth not an unconstitutional seizure/detention make.